[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 576 
This action has assumed the form of one in equity to abate a nuisance which it is alleged the defendant maintains upon the plaintiff's land, but in every substantial respect it is really an action at law to recover the possession of real property. There was no question made, however, in the courts below with respect to the form of the action, and no question of that kind is raised here. The case must, therefore, be reviewed in this court in the same way as if it had been in form what it is in fact, an action at law to recover the possession of real property. The principles of law that apply in such cases must control the disposition of this appeal.
The controversy is concerning the title and possession of two small parcels of land which originally were under the *Page 578 
waters of the Hudson river. Each parcel is described in the complaint in a separate cause of action. The second parcel thus described, and which is known in the case as parcel number two, is not really a subject of controversy between the parties. The defendant does not dispute the plaintiff's title to that parcel, nor does it claim any title in itself. It simply alleges by way of defense as to that cause of action that the defendant was never in possession of the land, and was not in possession at the time of the commencement of the action. This is simply an averment which concedes the plaintiff's title, denies any interference either with her title or possession, and asserts that there never was any cause for this action in so far as it relates to this particular parcel. The trial court, however, has found that at the time of the commencement of this action the defendant was in possession of the parcel, and exercising certain acts of ownership over it which justified the plaintiff in including it in the controversy. It is admitted that the defendant at least occupied some small part of it for a switchman's shanty, and while there is some dispute in regard to its responsibility for the maintenance of the telegraph poles and wires, yet the case is in such condition that we have no right to say that the findings of the trial court are against evidence. They are supported by sufficient evidence, and, having been affirmed on review by the Appellate Division, they are not open to review here. The question, therefore, in regard to this parcel may be eliminated from the discussion, and the judgment below, in so far as it relates to that, cannot be disturbed.
The real controversy between the parties was with respect to the title to the first parcel described in the complaint, and which is known in the case as parcel number one This, like the other parcel, was originally under the waters of the river, and the judgment below is to the effect that the plaintiff was entitled to recover an undivided half of it, the other half having been found to belong to the defendant. The plaintiff's title to this parcel is founded upon the patent from the commissioners of the land office to her remote grantors, bearing date the 18th of July, 1870. These grantors were then the *Page 579 
owners of the adjoining upland, and apparently were entitled, for that reason, to a grant from the state. One or more of the mesne conveyances under which the plaintiff claims title does not specifically describe this parcel. It is, however, I think, included within general words of description sufficient to identify it so as to pass by a conveyance. Moreover, when land under water has been conveyed by the state to the owner of the adjacent uplands, the lands under water so conveyed become appurtenant to the uplands, and will pass by a conveyance of the latter without specific description. The grant from the state must, under the statute, be made to the upland owner who, as such, has the prior right, and, hence, it would seem to be unnecessary, when the latter conveys his lot or farm to which the land under water is appurtenant, to describe the land under water separately. So we think that the various grants to the plaintiff from the parties to whom the state conveyed the parcel in question sufficiently described it to vest title in the plaintiff, in the absence of some prior grant or superior title in the defendant.
It is contended that the plaintiff failed to prove possession of the parcel in question in herself or predecessors in title within twenty years prior to the commencement of the action. But having proved prima facie that she was vested with the legal title, then, under section 368 of the Code, her possession is to be presumed, and the possession of any one else is presumed to be under or in subordination to this title. It becomes necessary, therefore, to examine the defendant's claim of title in order to determine whether it has a better one than the plaintiff. The defendant is the successor in interest of a railroad corporation created by chapter 216 of the Laws of 1846. The two corporations were merged and consolidated in the defendant under an agreement made in 1869, authorized and confirmed by chapter 917 of the laws of that year. The defendant's claim of title originated in the filing of a map in 1868, which it is assumed covered the parcel in question. This map was made and filed under the fourth section of the act incorporating the defendant's predecessor *Page 580 
in interest, and under the fifth section of chapter 30 of the Laws of 1848, which provides that if at any time after the location by the railroad company of its track, and the filing of the map, it should appear to the directors that the line or some part thereof might be improved, it should be lawful to alter the line and cause a new map to be filed. It appears that, shortly before the consolidation of the original railroad with the defendant in 1869, it proceeded to fill in the parcel of land under water which is now in controversy, and to prepare it for the uses of the corporation. There seems to be no dispute concerning the fact that the defendant or its predecessor did fill up that part of the river, and thus reclaimed the land in controvery. In other words, this parcel of land in its present condition was created by the defendant or its predecessor by filling in the shores of the river with earth. But no title has been acquired by the defendant in that way, or by indicating the parcel upon the map. The railroad company could not acquire title to land under water by taking possession of it and filling it up. The title still remained in the state, and the grant from the sovereign to the owner of the adjoining upland would carry the title to him. (Blakslee Mfg. Co. v. Blakslee's Sons IronWorks, 129 N.Y. 155; People ex rel. Blakslee v. Commrs. ofthe Land Office, 135 N.Y. 447; N.Y.C. H.R.R.R. Co. v.Aldridge, 135 N.Y. 83; Saunders v. N.Y.C. H.R.R.R. Co.,135 N.Y. 613; Saunders v. N.Y.C. H.R.R.R. Co., 144 N.Y. 75. ) But the defendant, on the 26th of December, 1873, procured from the commissioners of the land office a grant of certain lands under water on the shores of the river for its corporate purposes, and which grant it is claimed included the parcel in question. But since the grant to the plaintiff's remote grantors antedated that to the defendant by three years, it follows that the state had no title at the time to the parcel in question that it could convey to the defendant. There is nothing in the language of the patent indicating that the commissioners of the land office supposed that they had any title to this parcel which they could convey, although the general language of the description may have covered it. The *Page 581 
prior patent to the plaintiff's predecessors was a grant for commercial purposes, and upon condition that within a specified time the subject-matter of the grant should be applied to commercial uses by the construction of docks and other conveniences for the promotion of commerce. It is said that the grantees did not apply the property to any such uses within the time specified, and we will assume that that is so. But this does not enable the defendant to treat the prior patent as invalid or void, or permit an attack upon it in a collateral way. If there had been a breach of the conditions subsequent in the grant, the defendant is not at liberty to take advantage of that omission. The state only can claim the right to vacate the patent for breach of conditions subsequent, and then only in a direct action or proceeding for that purpose. The defendant can raise no such question in this court.
The learned counsel for the defendant contends that the prior patent from the state to the plaintiff's remote predecessors was void for champerty. This point assumes that when that grant was executed and delivered the defendant held the land adversely under a specific claim of title, but it had no record or paper title whatever at that time. The railroad had then filed a map and made a survey. But that clearly was not a sufficient basis for an adverse possession within the statute avoiding grants of land for champerty. The conveyances in the chain of plaintiff's title made in 1887, and subsequently, are attacked on the same ground. The only specific title that the defendant then had was the patent of 1873, in which various parcels of land under water situate in different counties of the state are described in general language. But since the state had already conveyed the land in question to the parties under whom the plaintiff claims, the general description of lands in the grant to the defendant does not necessarily include the parcel in question. The patent to the defendant should not be construed as a grant of any lands which the state had conveyed by prior deed, and which it did not own when the conveyance to the defendant was given. Moreover, the trial court found all the facts with *Page 582 
respect to adverse possession in the plaintiff's favor, and hence it is not open to the defendant to attack any of the deeds in the plaintiff's chain of title for champerty. (Crary v. Goodman,22 N.Y. 170; Saunders Case, 135 N.Y. 613.)
The principal question litigated upon the trial was under the defense of adverse possession, and that is the most prominent question presented by the argument in behalf of the defendant in this court. It is quite likely that upon the proofs in the case, it could be held, as matter of law, that the defendant had been in the actual possession and occupation of the parcel since about the year 1887. But it was necessary in order to sustain this defense for the defendant to show that such adverse possession existed for at least twenty years prior to the commencement of the action, or from about the year 1873, and the trial court has found that it has not been in the actual, exclusive or continuous possession, occupation or use of the parcel for that period. Whether the defendant had held the premises adversely for a sufficient period of time to bar this action was, in its nature, a question of fact; though if the facts and all inferences to be drawn from them were undisputed, it might be a question of law. The burden of proving adverse possession was upon the defendant, and it had to encounter, in the first place, the presumption of law that the plaintiff was in possession under her title derived through the patent of 1870 from the state. The defendant's possession was, at best, upon the evidence somewhat equivocal. It cannot be said, as matter of law, upon the evidence in the record, that any one was in the actual possession and occupation of the parcel during the period of twenty years prior to the commencement of the action. The land was not inclosed or cultivated, or put to the exclusive use of any one. When the defendant's right rests entirely upon a claim of adverse possession, it must be shown that there has been a real substantial inclosure and actual occupancy, a possessio pedis,
which is definite, positive and notorious. (Jackson v.Schoonmaker, 2 Johns. 230, 235.) The rule applicable to the defense of adverse possession was stated by this court in the case of *Page 583 Bliss v. Johnson (94 N.Y. 242) in the following language: "The settled principles of law require courts to consider the true owner as constructively in possession of the land to which he holds the title, unless they are in the actual hostile occupation of another under a claim of title; and this rule is still more imperative in the case of wild and uncultivated tracts or lands which are not legally susceptible of actual occupation and cultivation. (Doe v. Thompson, 5 Cow. 371; Thompson v.Burhans, 79 N.Y. 99.) This possession is deemed to continue until there is an actual disseizin and expulsion of the true owner from the land, and when such dispossession terminates, if it does terminate within twenty years, the possession is, by construction of law, considered as having again returned to him who holds the legal title." The parcel of land in controversy was of such character and so situated that it was scarcely susceptible of actual occupation and cultivation. Passengers to and from the railroad station passed over it. It was, in a certain sense, connected with the grounds surrounding the station, and not until the defendant extended its railroad track over it, and set up a derrick upon it about the year 1887, can it be said that there was any actual occupation or possession by any one. It was, therefore, competent for the trial court to find, upon all the evidence, that there was no adverse possession by the defendant within twenty years sufficient to bar the plaintiff's right of recovery.
There is one other question in the case, and that arises upon an exception to the exclusion of proof offered by the defendant, that it had paid the taxes on the parcel in question since the year 1880 and down to the year 1894. It was stated that this evidence was offered for the purpose of supporting and showing the defendant's claim of possession. Payment of taxes is no evidence of possession, either actual or constructive. (Greenleaf v. B., F. C.I.R. Co., 141 N.Y. 395, 399.) It has sometimes been regarded as an act which shows a claim of title, but not a claim of possession, and if there had been any controversy in the case with respect to the nature of the defendant's claim of title, it would possibly have been competent *Page 584 
for the defendant to show that it had paid the taxes on the land. But there was not, and could not have been, any question with respect to the nature of the title which the defendant claimed. It claimed under the patent of 1873, preceded, as it was, by the filing of a map including the parcel in question, and by the act of filling up the space and thus creating dry land as it exists. The payment of taxes by the defendant could have added nothing to its possession or its claim of title, and since that fact could have had no influence on the issue of actual possession, the ruling of the court excluding the proof, whether right or wrong, was immaterial, and, therefore, the exception is not available to the defendant for the purpose of reversing the judgment.
For these reasons we think the judgment below should be affirmed, with costs.
All concur, except GRAY, J., absent.
Judgment affirmed.