### PUTNAM et al. v. PUTNAM et al.

(Supreme Court, Appellate Division, Third Department. December 9, 1902.)

1. PARTITION—PROPERTY SUBJECT.

An irregular strip of land was used as a means of egress to two different improved lots, the lots and the strip being owned in common by certain heirs. In partition proceedings the two lots were set off in severalty, one to each of two of the heirs, and the strip was set off in common to these two heirs "as appurtenant to" each of the lots. *Held*, that the owner of neither of the lots could enforce partition proceedings as to the lot held in common.

2. SAME—MORTGAGES.

The owner of one of the lots mortgaged it, "together with the appurtenances." *Held*, that the "appurtenance" of the strip passed under the mortgage.

Appeal from trial term.

Action for partition by John Lewis Putnam and another against John R. Putnam and others. From a judgment entered after trial, dismissing the complaint upon the merits, plaintiffs appeal. Affirmed.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and CHESTER, JJ.

Winsor B. French & Son, for appellants.
C. S. & C. C. Lester, for respondents Goldsmith and Lester.
Nash Rockwood, for respondents John R. Putnam and others.
Stickney, Spencer & Ordway, for respondents R. M. S. and C. B. Putnam.
Corlis Sheldon, for respondent Israel Putnam.

KELLOGG, J. This appeal involves the interpretation of a grant by way of mortgage, and what was intended to be passed to the mortgagee under the words of the grant, "together with the appurtenances." The action is brought to partition an irregular strip of land in the village of Saratoga Springs. As appears by the map, the strip fronts on a street 14 feet and extends back about 80 feet; then extends at right angles westerly about 40 feet, with a width of about 25 feet. Its northerly end is bounded by what was known as the "Putnam Homestead," and formed the outlet of that homestead lot to the street; on the west and south by what was known as the "William Putnam House," and was used as a means of access to the rear of that house. This was so in 1875, when the whole premises were owned in common by the heirs of Lewis Putnam. In 1875, in an action in partition between the heirs, the lands were divided by commissioners, and their report confirmed June 22, 1875. By the com-

missioners the homestead lot, on the map marked "No. 10," was set off to Jennie Putnam, and the William Putnam house, marked on the map as lot "No. 8," was set off to plaintiff John L. Putnam, and the strip sought to be partitioned in this action was disposed of by the commissioners as follows: "We have also set off in common to defendants John L. Putnam and Jennie L. Putnam, as appurtenant to the lot known as the 'William Putnam House,' and marked 'No. 8' on the annexed maps, and the premises last above described as the 'Homestead,' and marked 'No. 10' on the annexed maps;" and here follows the description of the before-mentioned strip. This disposition of this strip was confirmed by the court. Considering the location of lots 8 and 10, and their uses at the time of partition, and considering also the then uses of this strip solely to serve the needs of the two lots, and the probable depreciation in their value without the strip, it is not difficult to attach the meaning of the commissioners and the court to the words used "as appurtenant to the lot," etc. Without doubt it was meant that the owners of the lots should forever have a common right of usage in the strip as an entirety; that there could, therefore, be no forced division at the instance of any owner, and no power of exclusion of either owner from the use of any portion of the strip. If the commissioners or court simply meant to set off this strip to John L. Putnam and Jennie Putnam as tenants in common, there would have been no use in setting it off "as appurtenant to the lot," etc. This judgment of the court must be accepted, and construed as would be like terms appearing in a deed of conveyance. Had the owners of the two lots and the strip conveyed the property lots 8 and 10 in severalty, and the strip to both, declaring it to be an appurtenance to each lot, there could be little doubt of his meaning, and none as to his power. The parties would take just what he conveyed, and take the strip as "appurtenant," giving full force to the grantor's intention. In such a case, can it be claimed that either party, without the consent of the other, could compel a sale or division of the strip made by the grantor and accepted by the grantees as appurtenant to the two lots? I think not. Many authorities are cited declaring that land cannot be appurtenant to land, and hence title to land will not pass under the word "appurtenances" as commonly used in deeds. This means that title to land will not pass by implication. In every case the authorities seek to define the word, and that is all. The court in Woodhull v. Rosenthal, 61 N. Y. 390, says: "A thing 'appurtenant' is defined to be a thing used with and related to as dependent upon another thing more worthy, and agreeing in its nature and quality with the thing whereunto it is appendant or appurtenant." This definition, however, of the word in the abstract does not prevent a different meaning which any grantor may himself give to the word as he uses it. When a grantor makes a strip of land, by express words, "appurtenant" to two other pieces, his meaning is to be discovered from the context, and not from the books. This strip of land having been set apart to conserve the needs of lot 8 and lot 10, I see no way in which either John L. Putnam or Jennie Putnam, or any subsequent grantee, can force a sale or division in an action of partition. This clearly would defeat the intention manifest in the original allotment, the

commissioners, and court. In that allotment, according to its terms, the plaintiff has acquiesced for over 25 years. He accepted what was given him with all its limitations and conditions, express and implied; and one of the implied conditions was that he would not interfere with the use of the strip in its entirety by Jennie Putnam or her grantees. This strip was also made an appurtenance to lot 8 by judgment of the court, and plaintiff, as owner of lot 8, held it and used it as such. When he mortgaged lot 8 "together with its appurtenances," I think he must be deemed to have included this appurtenance. It is not strictly true in all cases that land cannot be made appurtenant to land. Land passes as "appurtenant" in the construction of wills (Otis v. Smith, 9 Pick. 292; Blackburn v. Edgley, 1 P. Wms. 600; Doe v. Collins, 2 Term R. 498; Buck v. Nuwton, 1 Bos. & P. 53; Bodenhorn v. Pritchard, 1 Barn. & C. 350), wholly depending upon the intention of the testator. In the construction of statutes land may be deemed appurtenant to land. Mcdermott v Palmer, 8 N. Y. 393. The demise of a house carries with it the garden curtilage and close. Smith v. Martin, 2 Saund. 400. In Archibald v. Railroad Co., 157 N. Y. 574, 52 N. E. 567, the court held that the owner of the upland on tide water took the land under water granted to his grantor as an "appurtenance"; that such land, once granted by the state to the owner of the upland, became an appurtenance to the uplands. This would seem to dispose of the declaration that land cannot be appurtenant to land. It does not seem questionable that a grantor may, if he choose, make it appurtenant.

Through the mortgage, the plaintiff John L. Putnam having lost his title to lot 8, "together with its appurtenances," we must conclude that he has now no title to this strip, sought to be partitioned in this action, and that, in any event, the plaintiff cannot maintain the action of partition as against the grantees of Jennie Putnam, for the reasons hereinbefore stated.

The judgment is affirmed, with costs. All concur.