The Town of Babylon, Appellant, v. William Dar-
ling, Respondent.

Title — lands under water of Great South bay — easterly
boundary of towns of Huntington and Babylon.

Under the "Nicolls Patent," which granted certain lands in Long
Island to the town of Huntington, and under the "Dongan Pat-
ent" confirming said grant, there was no fixed eastern boundary of
the granted lands, from the source of the Nassaquack (now the Nis-
saquoque) river southerly to the Atlantic ocean. Subsequently,
however, a third patent, known as the Fletcher patent, was exe-
cuted to the town of Huntington, on the petition of its inhabitants,
which fixed as the eastern boundary of said lands a line running
from the sound southerly to the east side of Sampawams neck or
point and thence to the Atlantic ocean. On examination of these
patents, held, that while the Fletcher patent did not divest own-
ership vested by the earlier patents, its intention and effect was to
give, by the agreement of the parties, the eastern boundary line of
the territory granted by the Nicolls and Dongan patents, and
remaining under the ownership of the town of Huntington, a fixed
location, and to make certain that which was uncertain. It had
the nature and effect of a deed of correction and is conclusive. The
eastern boundary of the town of Babylon, which was created from
the town of Huntington, is, therefore, as to lands under the water
of Great South bay, a line running south from the easterly side of
Sampawams point. Title to lands under the water of the bay east
of that line and west of the town of Brookhaven or the ranges is in
the state of New York.
   Town of Babylon v. Darling, 146 App. Div. 893, affirmed.

   (Argued November 26, 1912; decided December 31, 1912.)

Appeal from a judgment of the Appellate Division of
the Supreme Court in the second judicial department,
entered August 7, 1911, affirming a judgment in favor of
defendant entered upon a dismissal of the complaint by
the court on trial at Special Term.

   Thomas Young, Martin W. Littleton and Asa A.
Spear for appellant.

   Timothy M. Griffing and Joseph Word for respondent

COLLIN, J. The town of Babylon seeks by this action to establish its ownership of the lands under the waters of Great South Bay within Long Island, between the western line, within the bay, of the town of Brookhaven and a line extending from Sampawams Point southerly across the bay. The action was against the defendant as a trespasser for taking clams from those lands. The decision of the trial court, that the title to the lands was not in the plaintiff, but was in the state of New York, was unanimously affirmed by the Appellate Division. The appellant asserts that the findings of fact of the trial court compel the reverse decision.

The appellant finds the title it asserts in the patent granted in 1666 unto the town of Huntington by Richard Nicolls, the colonial governor, and known as "The Nicolls Patent." It granted to the town the land "from a certaine river or creeke on the West Com'only called by the Indyans by the name of Nackaquatck and by the English the Cold Spring, to stretch eastward to Nassaquack River; on the North to bee bounded by the Sound running betwixt Long Island and the Maine; and on ye South by ye sea, including there nine several necks of Meadow Ground." This patent was confirmed by the royal patent of 1688, known as the Dongan patent.

The appellant was created in 1872, from the town of Huntington, by an act of the legislature, and all the property, interests or rights which the town of Huntington had in the Great South Bay east of a line drawn south from Sampawams Point to the Atlantic Ocean was vested in it. The western boundary line of the grant by the Nicolls patent is not in dispute, and is several miles west of a north and south line through Sampawams Point. The Nassaquack River (now the Nissaquoque River), named by the grant as an easterly boundary, flows northerly and empties into Long Island Sound. Its source is approximately equidistant from the sound and the northern shore of the bay. Obviously, therefore, the easterly boundary of the granted lands from the source of the Nassaquack River southerly to the Atlantic Ocean was not

fixed by the Nicolls and Dongan patents, except in so far as the words "including there nine several necks of Meadow Ground" may effect that result. Such fact is the source of this litigation.

In 1694 a third royal patent, known as the Fletcher patent, was executed to the town of Huntington. While this patent is not included in the findings of the court it is within the record, and is asserted and used by both of the parties as a found fact. Moreover, undisputed facts may be considered for the purpose of upholding the judgment. (*Dyke* v. *Spargur*, 143 N. Y. 651.) The Fletcher patent gave, granted, ratified and confirmed unto the town of Huntington the land bounded on the south, west and north as described in the Nicolls and Dongan patents, "and on the east by a line running from the west side of a pond called and known by the name of Freshpond to the west side of Whitman's dale or hollow, and from thence to a river on the south side of our said Island of Nassau on the east side of a neck called Sampawams, and from the said river, running south to the said South Sea." The east boundary was, therefore, a line running from the sound southerly to the east side of Sampawams Neck or Point and thence to the Atlantic Ocean. The trial court found that subsequent to the year 1757 the town of Huntington, and the town of Babylon subsequent to its creation in 1872, claimed and exercised certain rights over the waters of the bay and islands within and lands thereunder east of the line running south from Sampawams Point, but as those findings are not inconsistent with or contradictory of the finding that "the eastern boundary of the Town of Babylon as to the land under water in the Great South Bay is a line running south from the easterly side of Sampawams Point" they do not invalidate the conclusion of law that the land under the waters of the bay east of the line south from the easterly side of Sampawams and west of the town of Brookhaven or the ranges is in the state of New York. The question for our determination is: Did the Nicolls and Dongan patents grant to the town of Huntington

any part of such lands? It requires no discussion to uphold the conclusion that the Fletcher patent did not divest ownership vested by the earlier patents.

The appellant asserts that those patents did include that land and that the Fletcher patent operated only to constrict the municipal and civil jurisdiction of the town.

We have stated that under the earlier patents there was no eastern boundary of the grant from the source of the Nassaquack River south to the Atlantic shore. In September, 1675, a judgment was rendered in an action in which Richard Smith was the plaintiff "that the land in question between Nassaquack River westward at Whitman's Hollow, and so to the fresh ponds, doth of right belong unto him (Richard Smith) and he is to be put in possession of the same." The judgment further provided: "However the said lands to bee within the jurisdiction of Huntington, as within their patent, though the property adjudged to the plaintiff." The land thus adjudged to Smith extended west from the Nassaquack River to Freshpond, the northern end of the east boundary line in the Fletcher patent, and to Whitman's dale or hollow by the west side of which that line ran.

The Fletcher patent recited at length the Nicolls patent and that certain named persons "in behalf of themselves and the rest of our loving subjects, the freeholders and inhabitants of our said town of Huntington, have by petition * * * prayed our grant and confirmation of the premises, so only as that the limits and bounds of the said town of Huntington shall not be as above mentioned, but as hereafter expressed — that is to say " as in the description we have already referred to from the patent. The recital was followed by the granting clause as follows:

"We have given, granted, ratified and confirmed, and by these presents do for us, our heirs and successors, give, grant, ratify and confirm unto the said Joseph Bayly, Thomas Wickes, Jonas Wood, John Wood, John Wickes, Thomas Brush, and John Adams, Freeholders and Inhabit-

ants of our said town of Huntington, hereby erected and made one body and politic and corporate, and willed and determined to be called by the name of the Trustees of the Freeholders and Commonalty of our said town of Huntington, and their successors, all the afore recited tracts and necks of land lying upon our said Island of Nassau, within our said county of Suffolk, bounded on the west by a river called and known by the name of Cold Spring, a line running south from the head of the said Cold Spring to the South Sea, and on the north by the Sound that runs between our said Island of Nassau and the main continent, and on the east by a line running from the west side of a pond called and known by the name of Freshpond to the west side of Whitman's dale or hollow, and from thence to a river on the south side of our said Island of Nassau, on the east side of a neck called Sampawams, and from the said river, running south to the said South Sea, together with all and singular the houses, messuages, tenements, buildings, mills, milldams, fencing, inclosures, gardens, orchards, fields, pastures, feedings, woods, underwoods, trees, timbers, commons or pastures, meadows, marshes, plains, rivers, rivulets, waters, lakes, ponds, brooks, streams, beaches, quarries, trees, harbors, highways and easements, fishing, fowling, hunting and hawking, mines, minerals, (silver and gold mines excepted), and all other franchises, profits, benefits, commodities and hereditaments whatever to the said tracts of land, within the limits and bounds next above mentioned, belonging to or in any ways appertaining, or therewithal used, accepted, reputed and taken to belong, or in anyways appertaining, to all intents and purposes and construction whatsoever; and also all and singular the rents, arrearages of rents, issues and profits of the said tracts of land and premises, heretofore due and payable; to have and to hold all and singular the before recited tracts and necks of land and premises, within the limits and bounds next above mentioned, with their and every of their appurtenances, unto the said Joseph Bayly, Thomas Wicks, Thomas Brush, Jonas

Wood, John Wood, John Wicks and John Adams, Trustees of the Freeholders and Commonalty of our said town of Huntington, and their successors forever."

We think it was the intention and effect of this patent to give by the agreement of the parties the eastern boundary line of the territory granted by the Nicolls and Dongan patents, and remaining under the ownership of the town of Huntington, a fixed location and to make certain that which was uncertain. It had the nature and effect of a deed of correction. The conditions under which it was given sustain that conclusion. No reason is given or is apparent why the people of the town should wish to constrict the limits of the town as a political division to a narrower territory than that held by them as proprietor. If they believed that they held title to the lands east of the east line of the Fletcher patent, no fact or reason appears in the patent or is urged by which they might have been induced to petition that the town might withdraw its civil jurisdiction from those lands. They rather wished, it may reasonably be believed, to have the easterly line of the land actually conveyed by the Nicolls patent located and fixed and to have the boundary of the land of the town and its civil jurisdiction made coterminous. The Nassaquack River as a boundary of the territory in fact granted had been in great part, if not wholly, destroyed by the judgment in favor of Smith. The remaining part of the eastern boundary had always been lacking. A reasonable and fair conclusion is that the people were petitioning that the eastern boundary line of the land actually granted by the Nicolls patent be by the agreement of the parties designated and made certain.

The appellant asserts that the Nicolls patent did actually grant lands along the north shore of Great South Bay east of Sampawams Point. He bases this conclusion upon a clause in the Dongan patent which he inserts in his brief as follows: " And alsoe *saveing to his most sacred majestie aforesaid*, his heirs and successors, *all ye Necks of Land yt* lye to the South within ye *limitts and*

*bounds aforesaid,* and ye Lands to ye Northward of ye same, yt. remaines unpurchased from ye Native Indians, anything contained herein to ye contrary in any wayes not withstanding."

Therewith he states the fact that there were ten necks of land west of Sampawams Point, of which nine were beyond question conveyed by the Nicolls patent. The clause above quoted, excepting "all ye Necks (not neck) of Land yt lye to the South within ye limitts and bounds aforesaid," establishes, the appellant says, that "ye limitts and bounds aforesaid" contained more than ten necks of land and so extended east of Sampawams Point. The force of this language is counterpoised by that in the granting part of the patent: "including therein nine severall Necks of Meadow ground, which tract of land, together with ye said Nine Necks *thereunto belonging within ye bounds and limitts afors'd."* It is conceded that the tenth neck counting from the western boundary had not been purchased from the Indians at the time the Nicolls and Dongan patents were given. It may safely be held that the excepting clause was precautionary to the end that no lands then held by the Indians should be included in or claimed under the patents. The argument of the appellant is, however, indubitably answered by the opinion of Chancellor KENT, delivered in 1814, in *Nicoll v. Trustees, etc., of Town of Huntington* (1 Johns. Ch. 166). The plaintiff in the case claimed title to certain lands in Great South Bay, situated a few miles east of a line extending south from Sampawams Point, under letters patent granted in 1688 to his ancestor, and to which the defendant town also made claim. It was adjudicated that the plaintiff's title did not sustain the action, and the chancellor, in exercising his discretion in the awarding of the costs, said: "It is admitted that the last patent to Huntington does not touch the islands. If the defendants have a title, it is under their first patent, of 1666, and the terms of it are extremely vague as to the southern boundary, and the better opinion is, that it is limited, in breadth, to the 'nine several necks of meadow

42

ground;' if that be so, the premises are excluded. These necks are undoubtedly to be taken in continuity. *Ad proximum antecedens fiat relatio.* It is a general principle, in the construction of written instruments, that a particular specification will exclude things not specified. But, whatever doubts might have existed under this patent, I consider them as removed by the last patent of 1694, which was granted on the petition of the inhabitants of Huntington, and was intended as a substitute for the preceding patents, 'so as that the limits and bounds of their town should not be as above mentioned, but as hereafter expressed.' The clear definition and location of the southern boundaries of their town, by this last patent, certainly concludes the inhabitants of Huntington from resorting to the vague and indefinite description of the former patents, even if we suppose, in opposition to the usage under our government, that there are technical difficulties in the way of a legal surrender to government of an estate in fee." (p. 183.)

In 1834 the three towns of Brookhaven, Islip and Huntington joined in an arbitration to be made by three representatives of each town. The determination made by the arbitrators fixed the western boundary line of the fisheries of the town of Brookhaven "under the two patents to that town and the patent to Col. William Smith or by any other title." This determination does not establish any fact of controlling force in this action and for two reasons: It did not fix the eastern boundary line of the town of Huntington; the defendant was not a party to it.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WERNER and CHASE, JJ., concur.

Judgment affirmed.