THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* TOMPKINS-KIEL MARBLE COMPANY, Respondent, Impleaded with Others.

78

(Argued October 4, 1935; decided November 19, 1935.)

John J. Bennett, Jr., Attorney-General (L. Hamilton Rainey, Henry Epstein, Hugh Reilly and Warren H. Gilman of counsel), for appellant.

Raymond T. Heilpern and Otto C. Sommerich for respondent. Since the issuance of the letters patent to the first patentee vested in him legal title to the lands under water affected thereby, subject only to the condition

that a dock be erected thereon within five years the grant was not abandoned by reason of the alleged failure to comply with the condition. (*Matter of City of New York* [*Upper N. Y. Bay*], 246 N. Y. 1; *New York Foundation* v. *People*, 259 N. Y. 54; *Matter of Benedict* v. *Lunn*, 244 N. Y. 373.) Since the sole condition contained in the grant to the first patentee was that he fill in the lands and erect a dock thereon within five years from the date of the grant, the breach, if any, occurred on October 18, 1859, and this suit having been started more than seventy years subsequent to the date of the alleged breach, is barred by section 31 of the Civil Practice Act. (*Matter of City of New York* [*Upper N. Y. Bay*], 246 N. Y. 1; *Nicoll* v. *N. Y. & E. R. R. Co.*, 12 N. Y. 121; *People* v. *Clarke*, 9 N. Y. 349; *People* v. *New York Transit & T. Co.*, 118 Misc. Rep. 686; 206 App. Div. 711.)

LEHMAN, J. The Commissioners of the Land Office, by letters patent dated October 18, 1854, granted to George Brooks " for the purpose of promoting the Commerce of our State, and for no other object or purpose whatsoever, * * * the power and authority to erect any dock or docks * * * upon the land under water " described in the deed. By the same deed they also granted to George Brooks, his heirs and assigns, the land under water, excepting and reserving to the People of the State " the full and free right, liberty and privilege of entering upon and using all and every part of the above described premises, in as ample a manner as they might have done had this power and authority not been given, until the same shall have been actually appropriated and applied to the purposes of Commerce, by erecting a Dock, or Docks thereon." The deed further provided that " if the said George Brooks his assigns shall not within Five years from the date hereof actually appropriate and apply the above described premises to the purposes of Commerce, by erecting a Dock or Docks thereon and filling in the

same, then these Presents and everything herein contained shall cease, determine and become void."

George Brooks was the owner of the uplands adjacent to the land under water. Without exercising his power or authority to erect a dock or docks, he conveyed the uplands, and, through mesne conveyances, title to the uplands was transferred to John Good in 1886. No deed in Good's chain of title specifically included the land under water appurtenant to the adjacent upland. John Good applied to the Commissioners of the Land Office for a new grant of the land under water adjacent to his uplands. The application was granted, and in February, 1887, he received a grant of the same land under water, which was described in the grant of 1854 to his predecessor in title, except that it extended for a lesser distance under the sea. That grant, too, was made subject to the same exceptions, reservations and conditions as the earlier grant.

In 1932 the State began this action, asking that the letters patent of 1854 and of 1887 be declared null and void, and that the defendants be barred and foreclosed of all right, title and interest in any part of the premises through or under the said letters patent. In the complaint the plaintiff, as a first cause of action, alleges that the grantee under the letters patent of 1854 failed to improve the lands under water, and abandoned his grant and all his right, title and interest in the land described in the grant. As a second cause of action, the plaintiffs allege that the grantee under the letters patent of 1887 failed and neglected to perform the conditions upon which that grant was made. Upon motion of the defendants the first cause of action has been dismissed.

When Good applied for, received and accepted, from the State, a grant of the land under water in front of his upland, he did not know that this court, in 1899, would decide that title to land under water is appurtenant to title in the adjacent uplands, and passes by a conveyance

of the uplands without specific description (*Archibald v. N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 574); nor did he know that in 1927 this court would decide that a grant of land under water conveyed an unrestricted title in fee, subject only to a right in the State to vacate the grant by direct action or proceeding brought for that purpose. (*Matter of City of New York* [*Upper N. Y. Bay*], 246 N. Y. 1; *New York Foundation* v. *People*, 259 N. Y. 54.) Perhaps without such prescience, he may have believed that a deed to the uplands did not convey to him a fee title to the adjacent land under water which could be defeated only by direct action or proceeding brought by the State. Whether at that time he was mistaken as to his rights in the land under water is unimportant now; for this, at least, is clear, that Good asked for and received a grant from the State of an unquestioned right to the land under water, subject only to the condition that the grantee or his heirs or assigns build a dock or docks within five years from the date of the second grant. Except for that grant, any right or title he may then have held could have been terminated for condition broken in 1859, whenever the State might choose to bring appropriate proceedings for that purpose. Because more than seventy years have elapsed since the breach of the condition contained in the first grant, the courts below have held that any cause of action based upon that breach is barred, and that the defendants' title derived from the grant of 1854 is now immune from attack. Even though we assume that the first grant conveyed an unrestricted fee subject only to defeasance for breach of condition, and that any action to defeat that title is barred by the Statute of Limitations, the question still remains whether the defendants, by accepting the second deed from the State, precluded themselves from asserting title under the first deed.

It is undoubtedly true that a deed by the State of land which it has previously granted to another is a nullity.

It does not follow that a grant to one who already has a doubtful or defeasible title through an earlier grant is also a nullity. In such case both grantor and grantee assume that the title is in the grantor; and a grantee may be estopped from denying the grantor's title so long as he retains any benefit from the new grant. (Cf. *Greene* v. *Couse*, 127 N. Y. 386.) Thus, where an owner of real estate, whose title is doubtful, obtains a confirmatory conveyance which is subject to conditions or limitations, he cannot reject the conditions and limitations after he has obtained the desired advantage which flows from the confirmatory conveyance. (*People* v. *Foote*, 242 App. Div. 162.) Again, where a grantee obtains a deed of correction, placing limits to the grant which had previously been omitted, the last description is conclusive. (*Town of Babylon* v. *Darling*, 207 N. Y. 651.) That is true, " even if we suppose, in opposition to the usage under our government, that there are technical difficulties in the way of a legal surrender to government of an estate in fee." (*Nicoll* v. *Trustees of Huntington*, 1 Johns. Ch. 166, 183, opinion by Chancellor KENT.) It is only by the interposition of such " technical difficulties " that the defendants have succeeded in the courts below.

Good's title in 1887 was enshrouded in doubt and existed only by the sufferance of the State. Good applied for something he did not then own: an unquestioned right to the land under water, which could not be terminated unless the grantee again failed to comply with the condition of the new grant. Acceptance of a new grant is an admission that title to the property granted is in the grantor. It is inconsistent with an assertion that the grantor had no power to make the grant. Where the parties have acted under mistake, the admission may perhaps not be conclusive at all times, but that is not true where the grantee, who already has a defective, restricted or doubtful title, obtains a new grant which removes defects, restrictions or doubts. That is the reason why

the terms of a correctional or confirmatory deed are dominant and conclusive, and the title of the grantee is determined solely by the new grant. That is true where-ever there was intention to fix the rights of the parties by the new grant rather than the old. If the grantee held rights under an old grant different from those included in the new grant, then he must be deemed to have voluntarily abandoned those rights.

There is no suggestion in this case that the parties here intended that after the new grant the grantee might still assert a superior title under the old grant. Both parties agreed, or at least assumed, that title was then in the grantor, and that the grantor had power to make the new grant. That is true in regard to the land under water described in the new grant; it is also true in regard to the strip of land under water not described in that grant, extending further into the sea; for title to land under water for promotion of commerce is inseparable from the shore uplands to which it is adjacent. Perhaps the grantee mistakenly believed that he had no rights under the old deed; perhaps he merely had doubts as to his title. In either event, the grantee desired a title invulnerable, at that time, to attack, and he obtained exactly what he asked for. If the grantee believed he had rights, though doubtful, under the old deed, his intention must have been to surrender or abandon them; if both parties believed that he had no rights, then there was no occasion for surrender or abandonment. It is unnecessary to decide whether technical difficulties stand in the way of " a surrender to government of an estate in fee;" the rule is well established that, where a grantee requests and receives from the State a new deed which removes defects, restrictions or doubts as to his title, the rights of the parties are conclusively determined by the last deed. (*Nicoll* v. *Trustees of Huntington, supra; People* v. *Foote, supra.*) The grantee here, in any view of the case, obtained under the second grant immunity from

attack by the State until the condition of that grant was broken. His successors in title may not now urge that the attack upon their rights under the first deed comes too late. Acceptance of benefit under the new deed, by operation of law, as well as by intent of the parties, terminated any fee title which the grantee may have had under the first deed.

The orders should be reversed, with costs in all courts, and the motion denied.

CRANE, Ch. J. (concurring). The People of the State of New York have brought this action to obtain a judgment declaring letters patent granted to George Brooks on October 18, 1854, null and void; that the letters patent granted to John Good, dated February 9, 1887, be declared null and void; and that the defendants be barred from any title or interest in the lands under water granted by said patents. No answer has been served. On the affidavit of August Kiel, president of the defendant Tompkins-Kiel Marble Company, a motion was made to dismiss the amended complaint on the ground (a) that it does not state facts sufficient to constitute a cause of action; (b) that the alleged cause of action did not accrue within the time limited by law for the commencement of an action thereon. The State submitted the affidavit of the Deputy Assistant Attorney-General setting forth the recorded facts which in turn called for the reply affidavit from Raymond T. Heilpern, attorney for the moving party. The Special Term granted the motion and, from the unanimous affirmance of the dismissal by the Appellate Division, an appeal has been taken to this court by its leave. The amended complaint contained two causes of action, but it is the first cause of action which has thus been summarily disposed of and with which we are to deal. The major facts are not disputed.

The People of the State of New York, on October 18, 1854, granted to George Brooks power and authority

to erect docks necessary to promote the commerce of the State upon the land under water adjacent to Long Island, in the town of Newtown, county of Queens, and did also " give and grant unto the said George Brooks his heirs and assigns, the land under water, and between high and low water mark, described as follows: * * * And these presents are upon the express condition that if the said George Brooks his assigns shall not within five years from the date hereof actually appropriate and apply the above described premises to the purposes of Commerce, by erecting a Dock or Docks thereon and filling in the same, then these presents and everything herein contained shall cease, determine and become void."

This grant to Brooks could not be attacked collaterally and no one could enforce the express condition subsequent except the State of New York. As against everybody except the State of New York George Brooks and his assigns held the land under water granted by this patent in fee. (*Matter of City of New York [Upper N. Y. Bay]*, 246 N. Y. 1; *New York Foundation* v. *People*, 259 N. Y. 54.) This action against Brooks' successor in title was not commenced until February 8th of 1932, over seventy-two years after the five-year period to erect docks had expired. This was too late. By section 31 of the Civil Practice Act, the People of the State will not sue a person with respect to real property by reason of the title of the People to the same unless the cause of action accrued within forty years before the action is commenced. The allegation of the amended complaint is that a dock was not built within five years, as stated in the express condition.

The facts, however, carry this case somewhat further. Among the mesne conveyances of the upland adjoining the grant of land under water is one to John Good, dated April 10, 1886. By this conveyance John Good took the upland owned by Brooks and, although the conveyance did not say so, it carried with it title to the

land under water, pursuant to our decision in *Archibald* v. *N. Y. C. & H. R. R. R. Co.* (157 N. Y. 574). If Brooks had title to land under water by reason of his patent, Good also received it when he obtained owner-ship of the upland, as the upland and the land under water in front thereof cannot be in two distinct per-sons when the patent has been obtained for commercial purposes in conjunction with the upland. For some reason not explained this John Good on November 1, 1886, made application to the State of New York for a grant of land under water covering a portion of the land under water theretofore granted by the State to George Brooks. In his application John Good said: " I will, on the eleventh day of September, 1886, apply to the Commissioners of the Land Office of the State of New York, at Albany, to grant to me, in perpetuity, so much of the lands under the water of the East river or Sound and land between high and low water mark, and extending to the permanent exterior water line established by law adjacent to the land hereinafter described, of which I am the proprietor and owner and actual occupant, as said Commissioners shall deem proper for the purpose of the beneficial enjoyment of same by me."

The application was granted on February 9, 1887, and covered the entire width of the original Brooks grant, but extended out about half the distance of the Brooks grant from the shore — so it is stated in the affidavits without contradiction, and so it appears from the maps annexed as exhibits. In other words, the Good grant overlapped about half of the Brooks grant. What was the effect of this subsequent grant? As Good, being owner of the upland, was also the owner of any rights in the land under water which Brooks possessed, it was unnecessary for him to make this application for another grant if he knew the facts and understood the circum-stances. Title was in him and he could only be divested

of it by action of the State brought within forty years from 1859.

The State in its brief has reasoned, and perhaps with some force, that Brooks had abandoned his grant — whatever this may mean — or that possibly some question had arisen about Brooks' title to land under water under his patent when he had not complied with the conditions. It may be that in 1886 the law of land patents was not as clearly understood as now. In *Thousand Island Steamboat Co.* v. *Visger* (179 N. Y. 206, at p. 213) we have a case where the grantee of a patent was seeking rights or privileges under a subsequent grant. This court said: " Crossmon appears not to have made improvements, within the time specified in the grant of 1883, and, therefore, applied for the subsequent grant; but as the State authorities had not taken action to vacate the prior grant, it was binding upon the grantee. If the State had not resumed its title by annulment of its grant, the title remained in Crossmon, subject to the terms imposed." (Citing the *Archibald* case, above referred to.)

The general rule appears to be stated in *Townsend* v. *Trustees of Brookhaven* (97 App. Div. 316, 330). " The grant [subsequent grant], so far as it overlapped the Smithtown grant, if it did, was void, under the rule that the king cannot grant the same thing in possession to one which he or his progenitors have granted to another." This rule of course would not apply to a subsequent grant which was in the nature of a deed of correction, placing limits to the grant which previously had been omitted. Such was *Town of Babylon* v. *Darling* (207 N. Y. 651). The Appellate Division of the Second Department, in *People* v. *Foote* (242 App. Div. 162, 168), have noted the *Town of Babylon* case as an authority for this statement of the law: " When a patentee applies for a confirmatory patent, his title thereafter depends wholly upon the terms of the confirmatory patent, even

though his confirmatory grant is less in extent than that which he formerly claimed to possess under a prior grant." This statement may be accurate if it is confined to a *confirmatory* patent, one which makes certain that which before was uncertain, but if it goes further than this I do not find it supported by the authorities. There is nothing in this record to show that Good applied for a confirmatory patent. Just as likely as not there was a misunderstanding in 1886 regarding the law and Good applied for a grant of land under water, not realizing that he had it all the time.

As before stated, Brooks in 1854 acquired his grant of land under water covering all and more than Good got in 1887. Although Brooks in his conveyance and the subsequent mesne conveyances into Good did not refer to this grant of land under water, it passed with the title to the upland. To again refer to the *Archibald Case* (157 N. Y. at p. 579), it is there stated: " Moreover, when land under water has been conveyed by the state to the owner of the adjacent uplands, the lands under water so conveyed become appurtenant to the uplands, and will pass by a conveyance of the latter without specific description." As the State took no action up to 1887, and the Brooks grant had passed to Good, there was no necessity or occasion for this new or additional grant, or his application therefor so far as appears of record.

The State goes much further, however, and asks that the grant to Good in 1887 be declared null and void for failure to comply with the conditions therein contained. Good was to build docks within five years, which would bring the period up to February 9, 1892. Forty years from that time would be February 9, 1932, and this action seems to have been brought on February 8, 1932, or one day before the expiration of the forty-year Statute of Limitations. As to Good, there may be a question of fact which should be tried out. The

State says the grant and conditions have not been complied with. In a reply affidavit of Mr. Heilpern he denies this charge and says: " That the lands affected by the grant have been filled in; that a dock has been erected thereon, and that the lands are being used for the purpose of commerce, as such purpose has been defined by the Court of Appeals."

I have reviewed the facts as they appear in affidavits on this motion for dismissal of the complaint on the allegations contained therein. One of the allegations is contained in paragraph 12 as follows: " That the grantee named in said grant [meaning Brooks] completely abandoned said grant and all his right, title and interest in the lands under water described in said grant."

In view of the fact that none of the deeds conveying the upland mentioned this Brooks grant of land under water or any rights therein; and the fact that some reason not stated moved Good to apply for another grant, we think that this allegation of the complaint should not be taken as a mere conclusion of law but rather as a statement of fact. A complaint is not to state evidence, and it may be that the State upon a trial will have additional facts or circumstances bearing upon the failure of Brooks to improve the land under water for commerce, and the reason why Good applied for a new grant.

In other words, these matters affecting State rights and the title of the People to the land under water should not be summarily disposed of upon motion. Rather, there should be an opportunity afforded for a full hearing. We have referred to the cases wherein the effect of a subsequent grant was in question, but we do not at this time intend to express our opinion upon the effect of this subsequent grant to Good. We prefer to have all the facts as they may appear after a trial. In view, therefore, of the allegations of this complaint, the statements made in the affidavits and the situation as presented in

the record of the title, we are of the opinion that the motion should not have been granted dismissing the complaint, and that the defendants should be compelled to answer, presenting such issues as they have.

O'BRIEN, CROUCH and FINCH, JJ., concur with LEHMAN, J.; CRANE, Ch. J., concurs in result only in opinion in which HUBBS and LOUGHRAN, JJ., concur.

Orders reversed etc.