## UNITED STATES v. 2.02 ACRES OF LAND, MORE OR LESS, SITUATE IN CITY OF NEW ROCHELLE, et al.

District Court, S. D. New York.

Aug. 12, 1943.

Harry T. Dolan, Sp. Asst. to Atty. Gen. of United States, for petitioner-plaintiff.

Aaron Simmons, of New Rochelle, N. Y. (William L. Moran, of New Rochelle, N. Y., of counsel), for defendant City of New Rochelle.

William A. Davidson, Co. Atty., of White Plains, N. Y. (Frank J. Claydon, Sr., Asst. Co. Atty., of White Plains, N. Y., of counsel), for defendants Westchester County Park Commission and County of Westchester.

Nathaniel L. Goldstein, Atty. Gen., of State of New York (Abe Wagman, of New York City, of counsel), for People of New York.

BRIGHT, District Judge.

This proceeding is brought to determine the just compensation to be paid for the taking by the Government of 1.23 acres of land owned by the County of Westchester and .798 acres owned by the City

of New Rochelle. These two parcels front on Long Island Sound in the City of New Rochelle, at or near the dock owned and operated by the Government in connection with Fort Slocum. They are taken for the purpose, among others, to provide accommodations for parking automobiles of army and civilian employees at the Fort.

Part of both parcels was originally under water, and those portions were granted by the State of New York to the present owners, and in one instance to a predecessor in title of the County of Westchester, and under these grants the State of New York lays claim to a portion of any award which may be made for both parcels upon the ground that by the taking, and in the instance of the Westchester County Parcel, before the taking, the conditions upon which the grants were made have been violated, the title because thereof reverting to the state.

■ By declaration of taking, the United States became vested with title and went into possession of the two parcels on August 27, 1942, as of which date their value must be fixed.

The title of the County of Westchester to lands, of which those taken are a part, came through a deed of Martin J. Keogh, Jr., dated September 17, 1925, by which was granted for the approach to Glen Island, part of the Westchester County Park lands, .87 acres or 37,897 square feet, and also all of the right, title and interest of the grantor in land under water by reason of a grant from the State of New York and which adjoined the upland contained in the acreage mentioned. There had been two grants by the State of New York to Martin J. Keogh, the father and grantor of Martin J. Keogh, Jr., one dated February 9, 1894, and the second October 27, 1900. The first grant was of .81 of an acre of land under water between high and low water mark in front of and adjacent to other land of Keogh "for the beneficial enjoyment of the same by the said adjacent owner pursuant to the statutes in such case made and provided". The second grant was of .202 of an acre of land under water between high and low water mark, adjacent to the upland of Keogh for the purposes "to build a retaining wall and to fill in the lands under water herein granted", but unless that was done within five years from the date of the grant, the same would become null and void; and excepted and reserved to the

People of the State of New York the full and free right and privilege of entering upon and using all and every part of the described premises excepting such parts as are actually occupied and covered by structures, docks or buildings of a substantial character, and such parts of said premises as have been actually filled in and reclaimed from low or marshy land. A third grant was made on March 27, 1931 to the County of Westchester, then the owner of the upland, of 20,002 square feet of land under water upon two express conditions— (1) that unless the lands granted should be improved within five years from the date of the grant, "by filling in the lands under water hereinabove described to provide for a park and parking place, which park and parking place is to be faced with a stone wall, (which shall be known as improvements) then these letters-patent and this grant shall become null and void as to the part not so improved; and no right, title or interest in and to the lands hereinabove described not so improved shall vest in the said patentee * * *; and the People of the State of New York may thereupon re-enter into and become possessed of the lands hereinabove described, or any part thereof which have not been or which are not then so improved, without any liability"; and the right to enter upon and use the part not improved was fully reserved. The second condition was that if the State should at any time acquire the premises and lands, or any portion thereof, the liability of the State shall be limited to the amount paid by the patentee for the patent, or a proportionate part thereof, together with the expenses necessarily incurred for the acquiring of the patent, fixed at $350, and also the value of the improvements on the premises or the proportionate part thereof which might be acquired.

Exhibit F is a map of the property acquired from Keogh, showing the upland in yellow, the part granted on February 9, 1894 in blue, and the grants in 1900 to Keogh in 1931 to the County in green. The State claims so much of the award as may be made for the part colored green.

The title of the City of New Rochelle to the upland is not shown; but it appears from the city's brief that it was acquired on August 22, 1925 by purchase from the Neptune Realty Company. The city thereafter received from the State on February 18, 1932, a grant of 29,719 square feet of

land under water adjacent to its upland upon three conditions, the first of which was that unless within five years the city filled in the land under water so as to provide a park and parking place, the grant should become null and void, and no right, title or interest would vest in the city in the part not so improved; the second, that if the State should at any time desire to appropriate the interest of the city, the State's liability would be limited to the nominal amount paid for the grant, plus the value of improvements erected by the grantee; and the third was that the lands granted "are to be used by the City of New Rochelle for park purposes only".

The State of New York makes no claim under the grant first made to Keogh in 1894. But under the other two grants affecting the lands of the County of Westchester, and the grant affecting the lands of the City of New Rochelle, the State claims that the grants were not in fee, but were made for a specific purpose, namely, to be filled in and used for park and parking purposes; that the People of the State retained everything else and when the federal government took the property, the use for park purposes was discontinued, the patentees lost all interest in the property, the property immediately upon such condemnation reverted back to the State, which would become entitled to so much of the award as is made for the property covered by the grants.

After the acquisition by the County of Westchester of the property granted by the State, it appears that a sea wall was built, and the land under water between the sea wall and the upland was filled in in 1933, to the elevation of the upland acquired from Keogh. It is stated that the cost of the construction of the sea wall was $4,750 up to high tide, and $1,300 more to 7½ feet, its present elevation. It is estimated that the fair and reasonable cost of filling in the lands acquired and building the sea wall was $14,000. Of the lands of the County of Westchester now taken, 6375 feet in front of the sea wall are still under water; but it was testified that it was entirely filled in to support and as the base for the sea wall, which extends out about 17½ feet into the water, the construction at the base of the stone wall being stone fill.

On December 6, 1940, the Westchester County Park Commission, which has jurisdiction over the area now in dispute, leased to the United States the part now taken from the County of Westchester, the areas stated in the lease being 17,500 square feet of upland, 30,000 square feet of improved water grant, and 6375 square feet unimproved water grant, a total area of 53,875 square feet, "to be used exclusively for the following purposes * * * parking of Government owned and controlled motor vehicles, and allied uses", for one year with the option of renewal from year to year, but not beyond December 30, 1945, at a rental of $3,000 per annum. The lease has been twice renewed, the last renewal expiring June 30, 1943.

It is contended by the State that this leasing itself was in violation of the condition upon which the two grants of the Westchester County lands were made and in and of itself was sufficient to constitute a reverter and to entitle it to the award for that portion granted. It was not disputed that up to the time of the lease the property had been used for parking and park purposes, and that the property is located in residential A Zone.

The testimony as to the value of the land of the County taken was given by two witnesses, each of whom stated that in his opinion the 1.23 acres were worth $50,000. The testimony of both was that inasmuch as the property was tax free, exempt from any zoning regulations, and could not be aliened by the County, there was no market for such property, there was no comparable property by which the market price could be fixed, and that the only value which could be given to it was its value to the County, and that could only be based upon the rental paid by the Government to the County, which capitalized at 6%, amounted to $50,000. Each of the witnesses stated that that value was not the fair market value of the property as between a willing purchaser and a willing buyer, but was the present worth of the property based upon its future benefits and by virtue of the lease.

On the other hand, for the Government one witness testified that the fair market value of the property was $7,000, or .129¢ per square foot, and the other $5,350, or 10¢ per square foot; and there was introduced in evidence proof of sales made within a few years preceding the taking of properties in the same vicinity, at prices ranging from 5¢ to 13¢ per square foot, with one exception, and that was of a sale to the Columbia Broadcasting Station, the

purchase price of which was $1.375 per square foot.

The property of the City of New Rochelle taken in this proceeding, as I have stated above, comprises .798 of an acre and adjoins the property of the County of Westchester. It was shown that the land under water was filled in in January 1933, and that the city paid for its share of the erection of the sea wall $2,245, $3,479.50 for gasoline, oil and truck hire to haul fill from the city dump to the area in question, and $80 for professional services, making surveys and locating the city line, a total of $5,704.50. The city in 1938 for the accommodation of the Fort Slocum employees and officials, and at their solicitation, built a bituminous macadam road through the property, at a cost of $928.21, the road running from Harbor Lane, a public street, to the dock. It was not disputed that at all times since the property had been improved, it had been used by the city for park purposes. The property taken has a frontage of between 35 and 40 feet on the Sound, and its fair market value as testified to by the city's witness, was $10,260, on the basis of 30¢ a square foot.

On the part of the Government, one witness testified that the fair market value of the land taken on the basis of .129¢ per square foot was $4,500 plus $250 for a small frame waiting station, and the other witness that the fair market value at 10¢ per square foot was $3,450 for the land and $200 for the improvement, a total of $3,650.

■ In my opinion, the just compensation to be awarded for the taking of the County of Westchester property cannot depend upon the amount of rental value, nor can it be that rental value capitalized. The lease had no permanency, and in my opinion, carried a very liberal rental. Nor can the value of either parcel be governed by the fact that each is at present exempt from taxation or zoning. They will so remain in the ownership of the Government. Much of both properties was obtained from the State for a nominal consideration in view of the purposes and uses to which they were to be put. The cost in a large part was for the improvements placed upon the same, and that expenditure, in my opinion, must be given weight in fixing what is just compensation. After all, they are no more than lands along the Long Island Sound, improved by the erection of a sea wall and by filling in to the grade of the upland. Taking all of these factors into consideration, and the many others urged by counsel for the respective parties, I find that the value of the respective parcels taken is with the improvements made thereon.

Parcel A, 53,875 square feet, formerly owned by the County of Westchester   $8,081.25

Parcel B, 34,700 square feet, formerly owned by the City of New Rochelle, with improvement   5,455.00

The question remains whether or not the State of New York is entitled to any part of the awards made. It is not disputed that the lands granted were filled in as required by the grants, with the exception that the State claims that the portion of the grant to the County of Westchester, outshore from the sea wall, was not so improved. But the uncontradicted testimony is that that portion was filled in with stone as the base for and to support the sea wall. It is also not disputed that the portions granted by the State have been used for park and parking purposes in so far as the City of New Rochelle is concerned, to the date of the taking, and in so far as the County of Westchester is concerned, at least up to the time of the lease to the Government. There is no showing that the State has taken any active measures of re-entry or to establish by direct action a violation of the conditions contained in the grants. Nothing has been done by it except to make claim for a portion of the awards in this proceeding.

■■ I think it well settled that grants by the State similar to those here involved are grants in fee, and that the grantees become vested with title in fee simple. People v. Tompkins-Kiel Marble Co., 269 N.Y. 77–81, 199 N.E. 10; Appleby v. City of New York, 271 U.S. 364–399, 46 S.Ct. 569, 70 L.Ed. 992. The State no longer has any right, title or interest in the lands granted. People v. Wainwright, 237 N.Y. 407–411, 143 N.E. 236. The conditions upon which the grants are made are obviously conditions subsequent, and the State can only claim the right to vacate the patent in a direct action or proceeding brought for that purpose. Archibald v. New York Cent. & H. R. R. Co., 157 N.Y. 574, 580, 52 N.E. 567; People v.

Wainwright, supra; New ·York Foundation v. People, 259 N.Y. 54–59, 181 N.E. 12; Matter of City of New York (Upper N. Y. Bay) 246 N.Y. 1–22, 157 N.E. 911; Matter of Benedict v. Lunn, 244 N.Y. 373–380, 155 N.E. 677. The grant of lands under water to Keogh passed by the conveyance to the County of Westchester, although not specifically described. Archibald v. New York Central & H. R. R. Co., supra; People v. Tompkins-Kiel Marble Co., supra.

■ I do not think the lease by the County of Westchester to the Government was a violation of the conditions contained in the grants. The land still continued to be used for parking purposes, and the County of Westchester, through its Westchester Park Commission, had the right to lease.

■ That because of the taking by the Government of the lands in question, they could no longer be used for park or parking purposes by the owners of the grants, did not vest any title to the awards in the State of New York. The value at that time was of the rights owned by the county and city. First Reformed Dutch Church v. Crosswell, 210 App.Div. 294, 206 N.Y.S. 132, 133, appeal dismissed 239 N.Y. 625, 147 N.E. 222.

In that case, a judgment for the plaintiff was affirmed in an action to determine title to an award in condemnation proceedings. Plaintiff's estate was limited to endure so long as a church was occupied and used upon the premises. The court said: "The premises in question did in fact cease to be used for the maintenance of a church thereupon. The disuser, however, was a consequence, not a cause, of a loss of title by the plaintiff. The city of New York, in condemnation proceedings, seized the estate of the plaintiff. It also seized the rights of reverter belonging to the heirs at law of the grantors. The seizure was of the entire title, wherever resident, by a single act of appropriation. There was, therefore, no interval of time between the seizure of the plaintiff's estate and the seizure of the rights of the heirs at law during which there could have been a reverter of title to the heirs because of a church disuser of the premises necessarily consequent upon the seizure. At the moment of appropriation there had been no disuser. At that moment the estate then being enjoyed by the plaintiff might have been continued forever. At that moment the rights of the heirs

were mere possibilities. These rights possessed no value capable of estimate. All that was valuable was the estate of the plaintiff. Therefore the money paid in by the city of New York should be paid to the plaintiff as for the only thing of value taken."

The claim of the State of New York to any portion of the award is, therefore, overruled and disallowed.