**UNITED STATES of America,**
**Appellee,**

v.

**GRAY LINE WATER TOURS OF**
**CHARLESTON, Appellant.**

No. 8687.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 5, 1962.

Decided Dec. 20, 1962.

deRosset Myers and Edward K. Pritchard, Charleston, S. C., for appellant.

Elizabeth Dudley, Atty., Dept. of Justice (Ramsey Clark, Asst. Atty. Gen., Terrell L. Glenn, U. S. Atty., and Roger P. Marquis, Atty., Dept. of Justice, on brief), for appellee.

Before SOBELOFF, Chief Judge, BRYAN, Circuit Judge, and HUTCHESON, District Judge.

ALBERT V. BRYAN, Circuit Judge.

Storied Fort Sumter, South Carolina, now a National Monument, situated on an island in Charleston Harbor, is accessible to tourists and other visitors only by small vessels landing at the island pier. The fort with its appurtenances is in the control of the National Park Service under the Secretary of the Interior. The question here is whether the Secretary may restrict to a duly selected concessioner the privilege of fare-charging craft to discharge and embark passengers at the pier. The District Court has upheld the precedence of the concession and enjoined appellant Gray Line Water Tours of Charleston, a former carrier for hire of Fort Sumter visitors, from such use of the pier. Error in the decree is assigned by *Gray Line* in three independent aspects:

1. Neither the Park Service, nor the Secretary, nor the United States has the power to bar the landing of any other fee-carrier at the pier, because it is not on or within the monument.

2. There is no authority for the award of a preferential concession of this kind.

3. In any event, the United States arbitrarily and capriciously, through the National Park Service, awarded the concession to someone other than the appellant.

The judgment of the District Court we find unexceptionable and, so, affirm.

█ In 1840, under appropriate State and Federal legislation, South Carolina conveyed to the United States 125 acres described as a certain bank or shoal within Charleston Harbor on which foundations had been laid for Fort Sumter.[1] By Act of Congress, approved April 28, 1948, 16 U.S.C. §§ 450ee, 450ee–1, 62 Stat. 204, the Secretary of the Army was required to transfer to the Secretary of the Interior control of the "structure known as Fort Sumter * * * together with such buildings and other improvements as are appurtenant to such site." At the same time the Director of the National Park Service under the authority of the Secretary of the Interior was given "the supervision, management, and control of such national monument, and shall maintain and preserve it for the benefit and enjoyment of the people of the United States, subject to the provisions of sections 1, 2–4 * * * of this title [16 U.S.C.]".

By section 3 of that title the Secretary of the Interior was authorized to make "such rules and regulations as he may deem necessary or proper for the use and management of the parks, monuments, and reservations under the jurisdiction of the National Park Service" and "may also grant privileges, leases, and permits for the use of the land for the accommodation of visitors * * *."

As authorized, the Secretary of the Interior issued the following regulation: "No person, firm, or corporation shall engage in or solicit any business or erect or maintain buildings or other structures *on* federally owned lands *within* any park or monument except when authority therefor has been granted pursuant to a revocable permit issued by an authorized officer or employee of the National Park Service." [Emphasis added.] 16 C.F.R. § 1.31(a) (2).

In the transfer from Army to Interior the Fort Sumter reservation was described as "containing approximately 2.4 acres, together with buildings and other improvements as are appurtenant thereto". A map accompanied it and bore the legend: "Boundary extends 100 yards beyond mean low water." At this time—June 1948—the boat pier projected about 273 feet from the wall of the fort. Later it was replaced by the present pier built by the United States and reaching not more than 220 feet outshore from the wall.

Gray Line in its contention that the pier was not on or within Fort Sumter first adverts to what was transferred to the Secretary of the Interior, that is 2.4 acres which, concededly, covers only the fort and its walls. Even to expand the area as far as mean high water would require 3.8 acres, continues the appellant, and thus the pier head was never within the Interior Secretary's dominion.

This conclusion, we think, shrinks the transfer by Army to Interior, for it included "buildings and other improvements * * * appurtenant" for the fort. The wharf, in our understanding, is by necessary implication an appurtenance to the fort. The evidence discloses no other ready access to the fort. Sheets v. Selden's Lessee, 2 Wall. 177, 69 U.S. 177, 187–188, 17 L.Ed. 822 (1864). When a vessel comes alongside the pier debarking or taking on passengers we think this is, practically, an activity on or within the pier itself, and thus on or within Fort Sumter.

1. In his findings of fact and conclusions of law the District Judge gives interesting and detailed references to the legal origins of Fort Sumter.

But this point need not be dilated, for the pier was certainly well within the 125-acre conveyance to the United States, and the United States rather than the National Park Service or the Interior Secretary sues here for the protection of its property. The grant from South Carolina vested title in the United States not only to the fort but also to that portion of the 125 acres consisting of harbor bottom within the metes and bounds of the deed. No restriction in the use, nor reservation of a reversionary interest, in the underwater land can be spelled out of the deed or the subsequent history of the area conveyed. Appleby v. City of New York, 271 U.S. 364, 382, 46 S.Ct. 569, 70 L.Ed. 992 (1926); United States v. 2.02 Acres of Land, 51 F.Supp. 56, 60 (S.D.N.Y.1943), aff'd, 143 F.2d 688 (2d Cir.), cert. denied, 323 U.S. 726, 65 S.Ct. 59, 89 L.Ed. 583 (1944); cf. Barclay v. Howell's Lessee, 6 Pet. 498, 31 U.S. 498, 507, 8 L.Ed. 477 (1832); United States v. 16 Parcels of Land, 281 F.2d 271 (8 Cir., 1960). The plat annexed to the grant reveals that this bottom land extends on every side of Fort Sumter far beyond the reach of the pier. So, the pier is well within the area deeded to the United States; even at its outermost extremity it was *on* and *within* land of the United States. A vessel going to and from the pier would traverse the Government ownership. This fact distinguishes ours from those situations where a carrier delivers or picks up passengers at the entrance to Government property without encroaching upon the Government holding. We think, too, that the use of the pier by Gray Line was clearly an engaging-in-business and for the reasons noted was upon Government property.

Confessedly, Gray Line had no permit or license from the United States to do so. A preferential concession had been awarded to one George E. Campsen, Jr.,

effective January 1, 1962. But until enjoined in this suit Gray Line persisted, despite warnings from the National Park Service, in landing its fares at the pier on the contention that the Campsen concession was unauthorized in law, as covering an activity independent, and not an incident, of the management and preservation of the monument.

The concession, we hold, was quite within the purpose and intendment of the Act setting Fort Sumter apart as a national monument. The Congress declared it should be "for the benefit and enjoyment of the people of the United States" but, obviously, to be made available to the public, water craft of some kind had to be provided. It, of course, could be undertaken either by the United States directly or through a private waterman.

■ When adopting the latter method, as it did here, the United States had to be assured of the safety of the vessels, the regularity of the schedule, the reasonableness of the fees to be charged and the general adequacy of the service. But neither the necessary investment, nor the assumption of the obligations, for such a service would be forthcoming from private sources without some substantial proof of the probable success of the venture. The inducement the Government tendered to an entrepreneur took the form of a preference[2] in the use of the pier. This, it seems to us, was a legitimate property-use regulation. The right of the United States to control the use of its property is not debatable. Constitution of the United States, Art. 4, Sec. 3, Cl. 2; United States v. San Francisco, 310 U.S. 16, 29, 60 S.Ct. 749, 84 L.Ed. 1050 (1940).

■■ Finally, Gray Line assails the injunction on the ground that the concession is invalid in that it was awarded in an arbitrary, capricious and un-

---

2. The concession contract to Campsen in § 15 declares that he is "granted a preferential right, not an exclusive or monopolistic right". The last phrase, of course, refers to the relationship between the concessionaire and the Government; it is not a stipulation for the benefit of any other operator.

just fashion whereby Gray Line was robbed of a fair opportunity to obtain it. The kernel of the grievance is that it was lost through the prejudice of the National Park Service—especially the Superintendent of Fort Sumter—against Gray Line. In this the appellant adverts to the fact that the concession was finally granted at a return to the Government considerably less than was originally offered in the bid of the successful concessionary. The immediate answer to this contention is that the appellant cannot assert any such claim or defense here. Prospective or unsuccessful bidders have no standing to attack the award of a contract with the Government. Perkins v. Lukens Steel Co., 310 U.S. 113, 126, 60 S.Ct. 869, 84 L.Ed. 1108 (1940); Friend v. Lee, 95 U.S.App. D.C. 224, 221 F.2d 96, 100 (1955). See also Heyer Products Co. v. U. S., 140 F.Supp. 409, 135 Ct.Cl. 63 (1956).

But because the appellant has so strenuously pressed the charge of unfair dealing with it, we relate the facts of record and these refute the accusation. Under the pertinent statute, 16 U.S.C. § 3, the Secretary of the Interior was allowed to grant a privilege, such as a concession, "without advertising and without securing competitive bids". The instant invitation for bids itself stipulated that the Park Service reserved the right to discard any and all offers, to make a counter-offer or to negotiate a contract with any other party, if that was considered to be in the public interest. While the final arrangement did decrease the amount to be paid by the concessioner, there is nothing in the record to show that this adjustment was not warranted by other considerations. Further, Gray Line declined to make an offer on several of the vital items of the invitation.

The fact findings of the trial court are well grounded in the evidence; we see no error in the District Judge's conclusions of law. His judgment will be affirmed.

Affirmed.