**EXECUTIVE LIMOUSINE SERVICE, INC., et al., Plaintiffs,**

v.

**The Honorable Brock ADAMS et al., Defendants.**

**Civ. A. No. 76–1210.**

United States District Court, District of Columbia.

May 3, 1978.

Maxwell A. Howell, Gregory P. Barth, Gregory M. Murad, Washington, D. C., for Executive Limousine Service, Inc., a Virginia Corp., and Washington Metropolitan Area Transit Commission.

Michael J. Ryan, Asst. U. S. Atty., Washington, D. C., for the Honorable William T. Coleman, Jr., Secretary of the Dept. of Transportation, the Honorable John L. McLucas, Administrator of the Federal Aviation Administration, James T. Murphy, Director, Metropolitan Washington Airports and Dexter P. Davis, Airport Manager, Dulles International Airport.

W. F. King, Alexandria, Va., for The Greyhound Corp., a Delaware Corp. and Greyhound Airport Service, Inc., a District of Columbia Corp.

## MEMORANDUM OPINION

PARKER, BARRINGTON D., District Judge:

In this proceeding the Court is called upon to determine whether the Federal Aviation Administration (FAA), an arm of the Department of Transportation, has a right superior to that of the Washington Metropolitan Area Transit Commission (WMATC or Commission) in exercising control over certain activities at Dulles International Airport (Dulles). The specific issue raised is whether the FAA has the exclusive authority to grant carriers the right to perform airline passenger transfer for hire services from Dulles to other points in the metropolitan area of Washington, D. C. The parties have filed cross motions for summary judgment. There being no genuine issues of material fact, and summary judgment appearing appropriate, the Court concludes that the FAA is clothed with exclusive authority over the activity in issue and summary judgment should be granted in its favor.

I

The plaintiffs in this litigation are Executive Limousine Service, Inc. (Executive Limousine) and, as intervenors, Washington Metropolitan Area Transit Commission; the defendants are the Secretary of the Department of Transportation, the Administrator of the FAA, other federal officials and the Greyhound Corporation. WMATC is a regulatory Commission operating under a Compact authorized by the Congress, D.C.Code § 1–1410 et seq. (1973), and signed by the District of Columbia and the states of Virginia and Maryland. Dulles Airport is a federal facility, owned and operated by the FAA, and is situated in Loudoun County, Virginia, within WMATC's jurisdiction.

Executive Limousine contracted with the FAA to operate a scheduled limousine service for airline passengers and airport employees from Dulles to three designated ho-

tels in Washington, D. C. The company also held a certificate of public convenience and necessity, issued by WMATC, allowing it to engage in limousine service between Dulles and those hotels. The certificate was first amended by WMATC to include an additional hotel and later amended to permit bus as well as limousine transportation.

Upon the expiration of its original contract with the FAA, Executive Limousine sought to include in a renewal contract the broadened operations recently certificated by WMATC. The FAA refused the new terms, in light of its contract granting Greyhound exclusive authority to transport airline passengers by bus between Dulles and stated areas within Washington, D. C. Greyhound was also certificated by WMATC.

The plaintiffs Executive Limousine and WMATC seek declaratory and injunctive relief asserting that the FAA's contractual grant of exclusive rights to Greyhound for bus transportation at Dulles is invalid and unenforceable and derogates WMATC's authority under the Compact.

## II

### A

■ As federal property by virtue of Article IV, Section 3, Clause 2, of the Constitution, the United States acting through the Congress has absolute and exclusive proprietary control over Dulles. *See Ivanhoe Irrigation District v. McCracken*, 357 U.S. 275, 294–95, 78 S.Ct. 1174, 2 L.Ed.2d 1313 (1958); *United States v. San Francisco*, 310 U.S. 16, 29–30, 60 S.Ct. 749, 84 L.Ed. 1050 (1940). As noted, the issue presented here is whether the FAA is authorized to exercise that control exclusively in the circumstances presented.

The FAA Administrator's authority over Dulles Airport and its operation is granted by the provisions of the Second Washington Airport Act, D.C.Code § 7–1401 *et seq.* (1973).[1] Section 1404 of the Act grants the Administrator "control over and responsibility for the care, operation, maintenance, improvements, and protection of the airport, together with the power to make . . . such rules and regulations as he may deem necessary . . . ." Section 1406 of the Act provides in part that:

> The Administrator is authorized to contract . . . for . . . performance of services at or upon the airport necessary or desirable for the proper operation of the airport . . . and such other services and supplies as may be necessary or desirable for the traveling public.

Pursuant to these statutory provisions the Administrator promulgated regulations having the force and effect of law. One of these regulations, which WMATC has not challenged in any particulars, provides in part:

> (a) No person may operate a taxicab or other motor vehicle on Dulles International Airport for the purpose of picking up a passenger for hire unless . . . :
>
> (1) He has a contract with the United States authorizing him to pick up passengers for hire on that airport.

14 C.F.R. § 159.4.

■ Although Congress also gave consent and approval to the Compact[2] and the formation of WMATC in order to ensure adequate regulation and improvement of mass transit in the Washington metropolitan area,[3] that general authorization does not impinge on the broad power given the FAA Administrator. WMATC is not a federal agency or instrumentality, but instead is comparable to a state regulatory agency that satisfies the need to coordinate the

---

1. The Act, while codified in the D.C.Code, is a federal statute and should not be considered a local District of Columbia statute.

2. The United States Constitution, Article I, Section 10, Clause 3, requires congressional consent through ratification before an interstate compact may become operative.

3. The Compact was enacted at a time when Congress was the legislature for the District of Columbia.

regulatory agencies of the three political jurisdictions involved, without regard to their geographic boundaries.

## B

█ Aside from the authority found in the Second Airport Act and the implementing regulations, convincing judicial precedent relied upon by the FAA Administrator establishes a federal official's right to contract for services under the circumstances presented here. In *Universal Interpretive Shuttle Corp. v. WMATC*, 393 U.S. 186, 89 S.Ct. 354, 21 L.Ed.2d 334 (1968), the Supreme Court was confronted with a situation and issues strikingly similar to those presented here. The problem before the Court was whether, in creating WMATC, the Congress disturbed the prior exclusive control exercised by the Interior Department over federal land. A conflicting claim of authority was asserted by WMATC against that agency. Specifically, the Commission sought to enjoin a concessionaire under contract with the Interior Department from operating a minibus on guided tours throughout a national park area[4] without prior WMATC certification. As in this proceeding, the Commission claimed that the Compact limited the Secretary of Interior's authority and that, unless certificated by it, the concessionaire could not operate. It argued that the Compact's enabling statute, D.C.Code § 1–1412, suspended any law "inconsistent with or in duplication of the provisions of the compact . . . ." After noting that repeals by implication are disfavored, the Court found that the Secretary's exclusive authority to contract for transportation services on the Mall was undiminished by the Compact.

In *Interpretive Shuttle* the Interior Secretary's authority arose under 16 U.S.C. § 176, which allowed him to "contract for services . . . provided in the national parks . . . as may be required." The National Parks Director was also authorized to make and enforce such implementing regulations as necessary. This is the nature

of the authority provided under § 1406 of the Second Airport Act, *supra,* and the implementing regulations. Also worthy of note is the Court's observation that a system of minibuses on the Mall was scarcely a *mass* transit of workers and commuters, which was the Commission's concern. 393 U.S. at 193, 89 S.Ct. 354. The FAA here argues convincingly that the same is true as to the airline passengers transported under its contract with Greyhound.

A Fourth Circuit ruling, *United States v. Gray Line Water Tours of Charleston*, 311 F.2d 779 (4th Cir. 1962), is relied upon for further support. The facts are nearly identical. Authorized by Congress to issue regulations and to grant leases for land and property under his control, the Secretary of Interior by regulation prohibited anyone from engaging in business on federally owned lands except upon National Park Service authority. A preferential concession was awarded an operator of a supply boat service to a national monument, Fort Sumter, located on a federally owned island. Gray Line, a former carrier for-hire of Fort Sumter visitors, sought to carry passengers over the same route provided by the concession and the Secretary sought to enjoin such interference. In supporting his request for relief the court upheld the regulation as "a legitimate property-use regulation. The right of the United States to control the use of its property is not debatable. Constitution of the United States, Art. 4, Sec. 3, C. 2 . . . ." 311 F.2d at 781. *See also United States v. Carter*, 339 F.Supp. 1394 (D.C.Ariz.1972).

## C

The Washington Metropolitan Area Transit Commission advances several other reasons why the FAA's authority should not be recognized by the Court. Taken together, however, they are not persuasive. The legislative history, the various congressional enactments and the case law clearly support the right of the FAA to contract exclusively with Greyhound for services at Dulles.

An appropriate order will follow.

---

4. The area involved was the Mall, a park area located in the center of the city of Washington and bounded in large part by national museums and monuments.