■ DANIEL A. BOONS, Appellant, v JOHN A. MARTOCCI, Also Known as JOHN MARTIN, et al., Respondents, et al., Defendants. [703 NYS2d 285] —Mercure, J. P. Appeal from a judgment of the Supreme Court (Donohue, J.), entered May 27, 1998 in Ulster County, upon a decision of the court in favor of defendants John A. Martocci, Theresa Martocci and Henry Hudson Casino and Marina, Inc.

In this action pursuant to RPAPL article 15, plaintiff seeks to establish his title to a 4.918-acre parcel of land (hereinafter the Parcel) situated on the west shore of the Hudson River in the Town of Saugerties, Ulster County, together with a 20-foot right-of-way extending the full length of the west line of the Parcel and a 16-foot right-of-way extending from the Parcel to State Route 32. Of the many prior or abutting owners named as defendants, only defendants John A. Martocci and Theresa Martocci, present or former owners of real property bounding the Parcel on the north and the west and burdened by the 16-foot right-of-way to the Parcel, and defendant Henry Hudson Casino and Marina, Inc. (hereinafter collectively referred to as defendants) appeared in the action. Henry Hudson Casino and Marina is owned by the Martoccis and derives its interest by virtue of a September 30, 1988 deed from the Martoccis, which purports to convey 11 acres of property including the Parcel.[1] Defendants sought dismissal of the action and asserted a cross claim against all parties except plaintiff and against the world based upon their claim that they adversely possessed the Parcel from and after January 1, 1986. They also interposed a

---

1. It should be noted, however, that defendants assert no title to the Parcel by virtue of any written instrument.

counterclaim for equitable relief to be granted in the event that plaintiff prevailed in his claim of title to the Parcel.

It is undisputed that the Parcel is the same property as that described in a July 1908 deed from Josephine Polhemus to The Glasco Ice Company, which utilized the property for harvesting ice from the Hudson River and storing it in an adjacent ice house. There is also no question that the Parcel was expressly excepted in the December 13, 1976 conveyance from Louise Gooss to the Martoccis that constitutes the source of defendants' title to the adjoining property. Plaintiff's claim of title derives from a tax sale deed from the Ulster County Treasurer to Ulster County recorded October 24, 1985 and a subsequent deed from Ulster County to plaintiff dated January 30, 1987 and recorded February 17, 1987. The description of the property conveyed in both of those deeds is as follows:

"ALL THAT TRACT, PIECE OR PARCEL OF LAND, situate in the Town of Saugerties County of Ulster, State of New York, Bounded and described as follows:

"described as Vacant, 4 acres, bounded North Gooss, South, East and West Osterhoudt, against which the words 'Aronauer, Milton' appear on the tax roll of the town of Saugerties for the levy and collection of 1980 taxes.

"Tax Map #029.003-01-25.000"

Following a bench trial, Supreme Court determined that the deed to plaintiff was invalid because the description "is too ambiguous to permit location and identification of the property with reasonable certainty and * * * the extrinsic evidence relied on by plaintiff is insufficient to cure the deficiency". Rejecting plaintiff's claim of title to the Parcel by virtue of the deed from Ulster County and other claims that need not be detailed here, Supreme Court made a declaration that the deed to plaintiff was invalid, void and of no effect, and that defendants had title to the Parcel and the 16-foot right-of-way thereto by adverse possession. Plaintiff appeals.

As a threshold matter, we conclude that Supreme Court erred in applying the requirement of RPTL 504 (6) ( RPTL former 504 [4]) that the description of the Parcel in the tax deed to Ulster County permits the property to "be identified and located with reasonable certainty" to the facts of this case (see, Goff v Shultis, 26 NY2d 240; Kiamesha Dev. Corp. v Guild Props., 4 NY2d 378; Riggs v Kirschner, 187 AD2d 759). In the absence of any competent evidence that defendants or any of them owned, occupied or had any other legally protected inter-

est in the Parcel at the time of the tax sale,[2] they lacked standing to assert a due process challenge to the propriety of the sale (*see, Mennonite Bd. v Adams*, 462 US 791, 798; *Congregation Yetev Lev D'Satmar v County of Sullivan*, 59 NY2d 418, 424-425; *Kiamesha Dev. Corp. v Guild Props., supra*, at 387). In any event, plaintiff is correct in his assertion that defendants' attack on the sufficiency of the deed description was barred by the two-year limitations period of RPTL former 1020 (4), which was in effect until January 1, 1995, more than two years following the recording of the tax sale deed. Contrary to Supreme Court's conclusion, the scope of RPTL former 1020 (4) is not limited to defects or irregularities in tax sale procedures. Rather, "[t]his court has * * * held that the applicable limitations period applies to claims of an inadequate property description" (*Biuso v Kurkill*, 157 AD2d 72, 74). We also agree with plaintiff that, in the absence of competent evidence that defendants were "in possession" of the Parcel, Supreme Court erred in affording defendants a presumptive right to possession pursuant to RPAPL 1519 (3).

Turning now to the merits of plaintiff's action, we conclude that, based upon the evidence adduced at trial and in the exercise of our authority to " 'grant the judgment which upon the evidence should have been granted by the trial court' " (*Carter v State of New York*, 194 AD2d 967; *see, Northern Westchester Professional Park Assocs. v Town of Bedford*, 60 NY2d 492, 499), plaintiff established his title to the Parcel by a preponderance of the credible evidence (*see, Schreiber v Gallow*, 166 AD2d 771) and was entitled to a declaration to that effect. We note that there is no dispute as to the location and metes and bounds description of the Parcel, and defendants came forward with no evidence that they or any person other than plaintiff owned it. The only real issue raised by the pleadings and the trial evidence is whether the property acquired by plaintiff from Ulster County and the Parcel, as described in the 1908 deed to The Glasco Ice Company and specifically excepted from the property conveyed to the Martoccis, are one and the same.

In that connection, plaintiff presented testimony and documentary evidence prepared or assembled by two licensed

---

**2.** Notably, all evidence concerning defendants' use, occupation or improvement of the Parcel was introduced solely in support of their adverse possession claim, which did not involve plaintiff. Recognizing that fact, when Supreme Court began receiving evidence on the cross claim, plaintiff indicated on the record that the succeeding evidence should be excluded from the record of any appeal from the judgment determining his RPAPL article 15 action. Defendants stipulated that the evidence would be so excluded.

surveyors and two experts in the field of researching and establishing chains of title to real property (a title searcher and a title insurance agent), all of whom expressed the opinion that plaintiff was the owner of the Parcel, which was previously owned by The Glasco Ice Company and then, by certificate of merger, an entity known as Ice Service Company, Inc. Although no deed could be found out of The Glasco Ice Company or Ice Service Company, Inc., the Parcel was identified on the assessment rolls against "Glasco Ice Co." from 1909 to 1921, "American Ice Supply" for 1922 and 1923, "American Ice Service Co." for 1924, "Ice Service Co., Inc." for 1925 and 1926, and then under the name of "Fred Bowsky", "Fred Bowski", "Fred Bosco" or "Fred Bosky" from 1927 through 1947, leading plaintiff's experts to the reasonable conclusion that the property had been sold at a tax sale and title taken by Bowsky by means of an unrecorded deed. Thereafter, the chain of title can be traced forward to Eugene Machel, Ernest Schirmer, Second Municipal Corporation, Milton Aronauer and, ultimately, plaintiff.

The same witnesses were able to offer a credible explanation for the erroneous reference to two bounding owners in the deed to plaintiff, i.e., bounded east by Osterhoudt, which should state "river", and bounded west by Osterhoudt, which should state "Gooss", defendants' predecessor in title. By setting forth the evolution of the subject assessment, plaintiff's experts were able to show how, once made, an error in an assessment roll (by no means a rare occurrence) would carry forward through the years. For instance, through 1939, the assessment roll properly identified the bounding owners: Aibel (Gooss' predecessor) on the north and west, river on the east and Osterhoudt on the south. Then, in 1940, Osterhoudt was improperly substituted as the owner of the property bounding on the west. Although the location of the property obviously had not changed, that error carried forward for all subsequent years. Similarly, the assessment roll showed the Parcel to be bounded on the east by "river" until 1945, when it was changed to "Bergman Co." For 1946 through 1951, no bounding owner was shown on the east, and then in 1952 "Osterhoudt" was erroneously entered. That erroneous entry carried forward for all subsequent years. We note, however, that the description of the parcel as set forth on the assessment roll always showed the bounding owner on the north to be a predecessor of the Martoccis.

Based upon the foregoing and other competent evidence adduced at trial, and notwithstanding the contrary testimony of

experts produced by defendants, which we find to be far less persuasive than the evidence presented by plaintiff's experts, we conclude that plaintiff established a satisfactory chain of title to the property as well as a plausible reconciliation of the errors contained in the deed to him (*see, Riggs v Kirschner*, 187 AD2d 759, *supra*).

We particularly disagree with defendants' contention that the tax map in effect at the time of the sale establishes that the property purchased by plaintiff is situated to the south of the Parcel. First, the tax map at issue, apparently dated October 31, 1979, was marked as defendants' exhibit F for identification but was never received in evidence—Supreme Court denied defendants' offer based upon the fact that the exhibit was not certified. Although a portion of the map is alleged to have been reproduced in the margin of a survey map received in evidence as defendants' exhibit E, that map excerpt (which was included on exhibit E as mere background but is now relied upon by defendants as evidence-in-chief) was not authenticated, was obviously annotated by the surveyor and is, in any event, patently erroneous. Notably, the map excerpt purports to depict the property conveyed to plaintiff as containing a mere 600 square feet of land. Worse yet, it ignores the existence of the Parcel, depicting the lands lying within the Parcel as merely a portion of the Martocci property, despite the fact that the Parcel was expressly excluded from the deed that represents the Martoccis' source of title. Further, even if properly authenticated and received in evidence, the evidence relied upon by defendants would have constituted nothing more than some evidence of the location of the property conveyed to plaintiff. We note that defendants make no argument that plaintiff is somehow bound by the location of the property as it was set forth on the most recent tax map as of the date of the sale, and we are unaware of any legal principles supporting such a proposition.

As a final matter, our review of the record discloses no basis for granting defendants the equitable relief demanded in their counterclaim. The parties' remaining contentions either need not be considered or have been considered and found to be unavailing.

Peters, Spain, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is reversed, on the law and the facts, with costs, plaintiff is granted judgment declaring him to be vested with an absolute and unencumbered title in fee to the property described in the supplemental complaint and that defendants and every person claiming under them or any of them be barred

from all claim to an estate or interest therein, and the counterclaim and cross claims are dismissed.

