*162 OPINION OF THE COURT
Santucci, J.
On this appeal we consider conflicting claims to an area of vacant property within the defendant Town of Huntington which the Town claims as parkland, but which is also alleged to be owned by the various plaintiffs in individual parcels within the subject area. The Town’s claims are essentially premised upon its sovereign rights as successor to title to the property, which was previously held by the Crown of England in the colonial era. The plaintiffs’ claims are premised upon deeds and chains of title and, in the case of the plaintiffs J.E Morgan Chase Bank, N.A., and other trustees, successor trustees, and surviving trustees of Sumner Gerard and other named members of his family (hereinafter collectively the Gerard plaintiffs), also upon certain tax deeds.
The lawsuit has its genesis more than 30 years ago. The background is as follows. In the early 1970s the Town undertook a land survey study to clarify its title to various parcels of land which had been identified in the then-new Suffolk County tax map. This ultimately led to the “discovery” of approximately 125 acres of vacant land (the subject area), which was unimproved since colonial times. A subsequent title search revealed that the Town allegedly had never conveyed its sovereign title to the property. Accordingly, in July 1972, the defendant Board of Trustees of the Town of Huntington (hereinafter the Board of Trustees) adopted a resolution claiming ownership of the vacant and undeveloped property. Public notice was thereafter posted on the property, claiming it as parkland. Nine years later, in September 1981, the plaintiffs commenced this action against the Town pursuant to RPAPL article 15, inter alia, to compel the determination of their claims of ownership of certain parcels of the subject property, and alleging that the Town’s occupation of the land without authority since 1972 constituted an unlawful taking. In its answer, the Town asserted, among other things, the affirmative defenses of statute of limitations and adverse possession. The Supreme Court subsequently directed that the Board of Trustees be added as a defendant in this case as well as in five other related pending actions. The Board of Trustees then interposed a separate answer in which it, inter alia, also asserted the affirmative defenses of statute of limitations and adverse possession. The answer also interposed counterclaims for a judgment declaring that the property is owned by the Board of Trustees by reason of colonial land patents, and for a *163 judgment declaring that the property was owned by the Board of Trustees pursuant to inverse condemnation, or taking, for which the three-year statute of limitations had expired.
After considerable discovery and motion practice, a jury trial was held in the Supreme Court, Suffolk County, beginning in April 2005. At trial, the defendants claimed title to the property tracing back to the original colonial patents. However, the plaintiffs presented expert testimony as to the chain of title for each parcel, along with maps and surveys which allegedly supported their claims to ownership of their respective parcels. At the close of evidence, the court, inter alia, granted that branch of the Gerard plaintiffs’ motion, in effect, pursuant to CPLR 4401 which was for judgment as a matter of law on the issue of their ownership of the four parcels to which they claimed ownership based on tax deeds granted in 1935 and 1947, citing Suffolk County Tax Act § 53. With respect to the Gerard plaintiffs, the court instructed the jury that the initial burden of proof “of establishing good title to each parcel of real property” was not on them, as it was on the other plaintiffs, “because their four tax deeds entitle them to a conclusive presumption of legitimate ownership as a matter of law.” Thus, the Gerard plaintiffs only were required to establish “the boundaries and location of their properties.” The jury found for the plaintiffs as to all parcels except for the one parcel owned by the plaintiffs Thomas E. O’Brien and Evelyn E. O’Connell (hereinafter together the O’Brien plaintiffs), regarding which the court declared a mistrial and directed a new trial. The court, inter aha, denied that branch of the defendants’ motion which was pursuant to CPLR 4401 for judgment as a matter of law with respect to all nine of the subject parcels. The court also denied the defendants’ motion pursuant to CPLR 4404 (a) to set aside the jury verdict finding that the plaintiffs, other than the O’Brien plaintiffs, established their respective title to eight of the subject parcels and for judgment as a matter of law with respect to all nine of the subject parcels. The court entered judgment accordingly, among other things, declaring that the plaintiffs, other than the O’Brien plaintiffs, have good, valid, absolute, and unencumbered title in fee simple to eight of the subject parcels, and that the defendants’ claims to the subject parcels are invalid, null, and void. These appeals ensued. On appeal, the defendants contend that the court improperly awarded the Gerard plaintiffs judgment as a matter of law on the issue of ownership and erroneously denied, inter alia, that branch of their motion which was *164 pursuant to CPLR 4401 for judgment as a matter of law with respect to all nine of the subject parcels, because their “superior sovereign title” was established as a matter of law. We agree.
The Board of Trustees’ original title to the property, which was derived from royal patents during colonial times, was the starting point for the plaintiffs’ chains of title, and was never disputed by them. Indeed, the plaintiffs concede that the land originally was owned by the defendants. Title to land in nearly all the Long Island towns was created by royal charter or patent, based on England’s “right of discovery” (Nance v Town of Oyster Bay, 23 AD2d 9, 12 [1965]), and title based only on grants from the Native Americans was not cognizable in law {id.). Accordingly, the plaintiffs’ title does not depend on Native American claims because Native Americans were deemed only to have possessory rights in the land and, therefore, they had no title to convey (see Oneida Indian Nation of N. Y. v County of Oneida, 414 US 661 [1974]; People v Foote, 242 App Div 162, 165 [1934], cert denied 302 US 760 [1937]). The original seventeenth century patents, known as the Nicolls, Dongan, and Fletcher patents, gave the Board of Trustees certain property in the Town of Huntington (see Matter of Jennings v Watt, 264 NY 306, 310-313 [1934]; Town of Babylon v Darling, 207 NY 651 [1912]; Nance v Town of Oyster Bay, 23 AD2d at 14). The colonial legislature ratified the grants as well as patents made to “freeholders” (Lowndes v Huntington, 153 US 1, 27 [1894]). These grants were ratified by the New York State Constitution (see Melby v Duffy, 304 AD2d 33, 36 [2003]), and again by the State Legislature (see Knapp v Fasbender, 1 NY2d 212, 222 [1956]).
At trial, the defendants’ evidence consisted, inter alia, of submissions of the original colonial patents to the subject land. The Nicolls patent granted land that is now the Town of Huntington to its inhabitants, the Dongan patent created the Trustees of the Town, and the Fletcher patent described property bounded by a river running from Cold Spring to the Atlantic Ocean. Also significant for purposes of this case was proof with respect to a tract of land located in Oyster Bay which was “purchased” by Thomas Powell in 1695 from Native Americans. This tract, known as the Bethpage purchase, allegedly included a “bulge” over and into the land which the defendants had acquired by colonial patents; this bulge is part of the property at issue herein. By resolution dated May 5, 1696 (hereinafter the 1696 resolution), the defendants gave Powell *165 the right to deal with the Native Americans to “purchase” additional acreage. Powell later allotted these lands to his descendants.
Inasmuch as both the plaintiffs and the defendants laid claim to the subject area, the burden of establishing ownership applied equally to the parties (see LaSala v Terstiege, 276 AD2d 529, 530 [2000]). However, a superior title claim cannot be proven merely by pointing to weaknesses in the opposing party’s title (see Town of N. Hempstead v Bonner, 77 AD2d 567 [1980]). Here, the defendants met their burden by submitting proof of superior title via the colonial land grant patents. Therefore, in order for the plaintiffs to be successful in this action, they had the burden of proving title which was superior to the sovereign title asserted by the defendants, as well as of proving the location of the parcels with common certainty (see RPAPL 1515 [2]). The plaintiffs failed to meet this burden.
The plaintiffs’ experts did not trace title back to the sovereign source or the Board of Trustees. Instead, the plaintiffs’ titles are based upon deeds from the nineteenth century. The plaintiffs argue that it was not necessary for them to go back to colonial times in order to prove superior title. However, the plaintiffs’ argument in this regard, and their concomitant claims to the property based upon nineteenth century documents, would only be successful if the defendants had been unable to carry their burden as to sovereign title (cf. LaSala v Terstiege, 276 AD2d at 530). While the plaintiffs contend that the nineteenth century deeds originate in the Powell/Bethpage purchase, this is more speculation than fact; it is just as possible that such deeds originated from mere land speculators who had no title from Powell or his descendants.
In any event, no evidence was adduced that Powell had consent from the defendants to acquire title to any of their land covered by royal patents. As indicated, by obtaining possessory rights from Native Americans in the seventeenth century, one did not acquire legally cognizable title (see Town of Oyster Bay v Stehli, 169 App Div 257 [1915], affd 221 NY 515 [1917]). Moreover, the 1696 resolution only provided Powell with license to obtain further possessory rights from the Native Americans and, as such, did not confer fee title to the subject land. Even the plaintiffs’ experts conceded that this was not a deed, but rather a “license to purchase.” To the extent that such “license” creates ambiguity in title, it should be resolved in favor of the defendants’ retention of title (see People v New York & Staten *166 Is. Ferry Co., 68 NY 71 [1877]). Thus, it cannot be concluded that Powell acquired title to the subject tract of land which allegedly bulged over from Oyster Bay into the town land and which had been granted to the defendants by the English Crown. Such a significant gap in the plaintiffs’ chain of title defeats their claim in the face of the defendants’ proof that the disputed property is part of the colonial land grants given to the Board of Trustees in the seventeenth century.
Nor did the plaintiffs’ experts offer reasonable explanations for other gaps in their chains of title (see Crawford v Town of Huntington, 299 AD2d 446 [2002]; Boons v Martocci, 268 AD2d 616 [2000]). For example, the plaintiffs’ title examiner, Edward F. McGinn, admitted at trial that he worked backwards and did not start from the sovereign source since he had no deed from the Board of Trustees. Instead, his abstract starts with an 1810 deed recorded in Queens County. As such, there was nothing to explain the gap in title from the Powell allottees to the 1810 starting point which McGinn used in the abstract. In addition, McGinn admitted that there were subsequent other multiple breaks in each of the purported chains of title which could not be explained.
“When reliance is placed solely upon paper title, the land not having been occupied, improved or inclosed, the proof must be of a chain of title from the original patentee or donee. A deed from a person not in possession, or not shown to be the owner, establishes no title” (Miller v Long Is. R.R. Co., 71 NY 380, 383 [1877]).
Notably, title by a lost deed must be proved by clear and certain evidence (see Edwards v Noyes, 65 NY 125, 127 [1875]; La Capria v Bonazza, 153 AD2d 551, 553 [1989]).
Further, to prove their claims to the subject parcels under RPAPL article 15, the plaintiffs also had to show the boundaries of each parcel with common certainty (see RPAPL 1515 [2]; McGahey v Topping, 255 AD2d 562 [1998]). However, the plaintiffs’ experts could not link the plaintiffs’ claims with the original Powell allotment lines. Nor did they provide any survey of the nineteenth century claims, but only a diagram and “surveys” of the diagram. Indeed, the plaintiffs’ surveyor admitted that he did not survey the properties, and McGinn never matched the boundaries of the Powell allotment parcels with the boundaries for the deeds from the 1800s, upon which the plaintiffs rely. Consequently, there is no proof that the starting points in the *167 purported surveys were the same starting points as those set forth in the deeds—the only way to determine the true location of the plaintiffs’ claims (see Duggan v Hyland, 50 AD2d 1066 [1975]). As a result, the plaintiffs failed to satisfy their burden of proof as to the fixing of the boundary lines at the alleged location (see City of Binghamton v T & K Communications Sys., 290 AD2d 797 [2002]; Duggan v Hyland, 50 AD2d 1066 [1975]).
With respect to the tax deeds put into evidence by the Gerard plaintiffs concerning the parcels to which they claim ownership, these do not refute the defendants’ title. “A greater estate or interest does not pass by any grant or conveyance, than the grantor possessed or could lawfully convey, at the time of the delivery of the deed” (Real Property Law § 245). Thus, conveyances of land to which the grantors had no title convey no interest to the grantees (see Robbins v Whitesell, 128 AD2d 764 [1987]; see also Miller v Long Is. R.R. Co., 71 NY 380, 383 [1877]). In other words, title acquired by tax deed is no better than the title of the person who allegedly lost the title for nonpayment of taxes. Here, the plaintiffs have not proven that the person or persons who lost title for nonpayment of taxes had title superior to the colonial patent title of the defendants. Thus, the Supreme Court erroneously determined that the tax deeds on which the plaintiffs relied in attempting to establish title to four of the subject parcels established title in the Gerard plaintiffs as a matter of law (see Town of Brookhaven v Aronauer, 65 AD2d 570 [1978]; see also Cameron Estates, Inc. v Deering, 308 NY 24 [1954]).
Therefore, based upon the evidence adduced at trial, we find that the jury verdict for the plaintiffs cannot be supported. Instead, the evidence demonstrates that the defendants were entitled to judgment as a matter of law as to all of the subject parcels. Accordingly, since there was no valid line of reasoning and permissible inferences which could lead rational people to find in favor of the plaintiffs, the Supreme Court should have granted the defendants’ motion for judgment as a matter of law pursuant to CPLR 4401 (see Szczerbiak v Pilat, 90 NY2d 553, 556 [1997]). The defendants, thus, were entitled to a judgment declaring them to be owners of all nine of the subject parcels, declaring that they are awarded full and exclusive possession of the subject parcels, and that the plaintiffs shall forthwith quit and vacate the subject parcels, and declaring that the plaintiffs’ claims to the subject parcels are invalid, and that the plaintiffs, and every person claiming under them, are forever barred from *168 asserting such claim or interest the invalidity of which was established in this action (see RPAPL 1521 [1]).
The parties’ remaining contentions either are without merit or need not be reached in light of our determination herein.
The appeals from the intermediate orders entered June 30, 2006 and October 24, 2006, as amended by order entered May 15, 2007, must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (see Matter of Aho, 39 NY2d 241, 248 [1976]). The issues raised on the appeals from the orders are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501 [a] [1]). Accordingly, the appeals from the intermediate orders are dismissed, the judgment is reversed, on the law, the defendants’ motion pursuant to CPLR 4401 for judgment as a matter of law with respect to all nine of the subject parcels is granted, it is declared that the Town of Huntington and the Board of Trustees of the Town of Huntington own all nine of the subject parcels, that the Town of Huntington and the Board of Trustees of the Town of Huntington are awarded full and exclusive possession of the subject parcels, and it is further declared that the plaintiffs’ claims to the subject parcels are invalid, and that the plaintiffs, and every person claiming under them, are forever barred from asserting such claim or interest the invalidity of which was established in this action, and the plaintiffs are directed to forthwith quit and vacate the subject parcels, that branch of the defendants’ motion which was pursuant to CPLR 4404 (a) to set aside the jury verdict finding that the plaintiffs, other than the plaintiffs Thomas E. O’Brien and Evelyn E. O’Connell, established their respective title to eight of the subject parcels and for judgment as a matter of law with respect to all nine of the subject parcels is denied as academic, the orders entered June 30, 2006 and October 24, 2006 are modified accordingly, and the appeal from the order entered May 15, 2007 is dismissed in light of our determination on the appeal from the judgment.
Mastro, J.P, Rivera and Fisher, JJ., concur.
Ordered that the appeals from the orders entered June 30, 2006 and October 24, 2006, as amended by order entered May 15, 2007, are dismissed; and it is further,
Ordered that the judgment is reversed, on the law, that branch of the defendants’ motion which was pursuant to CPLR 4401 for judgment as a matter of law with respect to all nine of the subject parcels is granted, it is declared that the Town of *169 Huntington and the Board of Trustees of the Town of Huntington own all nine of the subject parcels, that the Town of Huntington and the Board of Trustees of the Town of Huntington are awarded full and exclusive possession of the subject parcels, and it is further declared that the plaintiffs’ claims to the subject parcels gire invalid, and that the plaintiffs, and every person clgdming under them, are forever barred from asserting such claim or interest the invalidity of which was established in this action, and the plaintiffs are directed to forthwith quit and vacate the subject parcels, that branch of defendant’s motion which was pursuant to CPLR 4404 (a) to set aside the jury verdict finding that the plaintiffs, other than the plaintiffs Thomas E. O’Brien and Evelyn E. O’Connell, established their respective title to eight of the subject parcels and for judgment as a matter of law with respect to all nine of the subject pgircels is denied as academic, the orders entered June 30, 2006 and October 24, 2006 are modified accordingly; and it is further,
Ordered that the appegd from the order entered May 15, 2007 is dismissed in light of our determination on the appeal from the judgment; and it is further,
Ordered that one bill of costs is awarded to the appellants payable by the respondents appearing separately and filing separate briefs.
Motion by the appellants on appeals from three orders of the Supreme Court, Suffolk County, entered June 30, 2006, October 24, 2006, as amended by order entered May 15, 2007, and May 15, 2007, respectively, and a judgment of the same court entered October 30, 2006 for summary reversal of stated portions of the judgment. By decision and order on motion of this Court dated February 26, 2008, the motion was held in abeyance and referred to the panel of Justices hearing the appeals for determination upon the argument or submission thereof.
Upon the papers filed in support of the motion, the papers filed in opposition thereto, and upon the argument of the appeals, it is
Ordered that the motion is denied as academic in light of our determination on the appegtls.
Mastro, J.E, Rivera, Fisher and Santucci, JJ., concur.